DAVID R. LURIE ET AL. *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN OF WESTPORT ET AL.

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued November 4, 1970—decided January 20, 1971

*Albert L. Coles,* with whom, on the brief, were *James J. O'Connell* and *David O. Chittick,* for the appellants (plaintiffs).

*Hereward Wake,* with whom were *Edwin K. Dimes* and, on the brief, *Edgar T. See,* for the appellee (defendant Famous Artists Schools, Inc.).

*Joseph F. McKeon, Jr.,* with whom was *John W. Boyd,* for the appellee (named defendant).

House, J. This is an appeal from a judgment of the Court of Common Pleas which dismissed the appeal of the plaintiffs from unanimous decisions of the planning and zoning commission of the town of Westport which had voted (a) to amend the Westport town plan of development to designate an area of sixty-two acres as a design development district under the Westport zoning regulations; (b) to rezone that area from AAA residence zone to design development district # 4-AAA and (c) to issue a special permit for the use of the area for the layout and construction of office buildings and accessory buildings and structures for the conduct of the business of Famous Artists Schools, Inc., and its subsidiary or affiliated companies.

The plaintiffs have claimed and briefed four assignments of error, on the basis of which they assert

that the judgment of the Court of Common Pleas should be reversed. We will consider them in the order in which they have been presented in the brief of the plaintiffs.

The first claim of error is predicated upon the assertion that the action of the defendant commission in granting a special permit to Famous Artists Schools, Inc., hereinafter referred to as F.A.S., was invalid because the commission imposed conditions which were beyond its power to impose. In granting the special permit the commission laid down in meticulous detail specific conditions to the granting of the permit. The majority of these conditions pertain to such on-site matters as size and location of construction, parking facilities, buffer areas, screening and landscaping, entrance roads, lighting and utility installation. The imposition of these conditions is not attacked. In addition to these on-site conditions, however, the commission also made issuance of the permit subject to certain off-site changes, improvements and conditions. These included: (1) the improvement of Partrick Road, a town highway, by widening it in a specified 500-foot area from a two-lane to a three-lane highway with specified evergreen plantings along the right of way. The commission in imposing this condition stated its belief that "it is reasonable and equitable to require F.A.S. to participate in the roadway improvement to an amount of at least 50% of the cost and to be solely responsible for the provision of the required trees along the road sides"; (2) that F.A.S. regrade an embankment adjacent to Newtown Turnpike to provide additional sight distance and relocate a section of the turnpike in accordance with identified detailed specifications submitted by Harvey B. Boutwell, an engineer, and as approved by the town

engineer; (3) that during specified hours F.A.S. provide three traffic guards to direct traffic, that right turns from the access road to Partrick Road or left turns from Partrick Road to the access road be prohibited and "[a] sign to such effect shall be requested from the Westport Traffic Authority and the prohibition shall be policed by the Westport Police Department"; (4) that all finished graded areas shall be planted and seeded; (5) that F.A.S. construct a school bus parking area at a defined location on the west edge of Newtown Turnpike on town property; (6) that traffic signs be installed at specific locations; (7) that a performance bond in the amount of $30,000 be submitted to guarantee the off-site improvements mentioned in conditions 1, 2 and 5; and (8) that a maintenance bond in the amount of $5000 be provided to guarantee the upkeep of the required plantings and the cleanliness of the property. It is the claim of the plaintiffs that these enumerated imposed conditions "were patently unauthorized and invalid" because the commission "had no authority to decree the expenditure of public money for the improvement of Partrick Road, . . . nor could it impose on F.A.S. . . . one-half of the cost of the road improvement. . . . It had no power to order F.A.S. to improve Newtown Turnpike . . . was not empowered to assume the role of traffic authority . . . not empowered to establish traffic patterns on Partrick Road, to establish street sign locations . . . to order the Westport Traffic authority to provide a sign . . . nor could it assume the jurisdiction of the Westport Board of Education by requiring F.A.S. to construct a school bus parking area at a point selected by the commission."

The short answer to these claims is that the defendant planning and zoning commission did none

of these things and had no authority to order the town or any agency of the town to do any of them. The broad powers possessed by the commission acting under the authority of §§ 8-2, 8-3, 8-23 and 8-24 of the General Statutes and the Westport zoning regulations do not include any such powers or authority nor did the commission purport to exercise such power and authority. Section 8-2 expressly provides that "certain classes or kinds of buildings, structures or use of land" may be permitted only after obtaining a special permit from the commission "subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values." The Westport zoning regulations, pursuant to this statutory authority, provide for design development districts and for their use upon the issuance of a special permit "subject to appropriate conditions and safeguards". The regulations permit the issuance of a certificate of occupancy in a design development district only after the requirements of the permit have been completed and a determination has been made by the commission that the conditions of approval have been met.

It would unduly lengthen this opinion to include even a summary of the findings made by the defendant commission upon which it predicated its decision conditionally to issue the design development district use permit in this case and the meticulous detail in which it prescribed all of the many conditions to which the issuance of the permit was made subject. It is precisely this specificity of condition which distinguishes this case from those upon which the plaintiffs chiefly rely. *Farina* v. *Zoning Board of Appeals,* 157 Conn. 420, 422, 254 A.2d 492, concerned the powers of the Trumbull board of appeals,

which board granted a special exception for a housing complex subject to the condition that a street "shall be widened at the direction of the town traffic commission so as to be suitable and adequate to handle the traffic generated by the housing project." As the majority opinion in that case noted (p. 423): "It is apparent that the condition imposed by the board of appeals delegated to the town traffic commission the duty of determining the extent of the traffic increase owing to the proposed housing development and what corrective measures, if any, would be required in order to accommodate this increased traffic." This court held that "[t]he board of appeals cannot, however, delegate the duty of making this determination to the town traffic commission." In the present case there was no such delegation of the duty of making a determination. From the evidence presented to it the commission itself properly determined exactly what off-site highway and traffic changes were desirable in the interests of public safety and then made the effectuation of those specific changes a condition of the special permit.

Similarly, in *Parish of St. Andrew's Church* v. *Zoning Board of Appeals,* 155 Conn. 350, 232 A.2d 916, which was also a case involving an exception granted by a board of appeals, the board granted an exception subject to a condition that the applicant convey a strip of land to the city but also reserved an option to revoke approval if the applicant failed to comply with the requirement. This court held (p. 353) that "[t]he conditions under which an exception is permitted must be found in the regulations themselves and cannot be altered," that the Stamford zoning regulations governing the granting of exceptions by the board of appeals did not permit such a decision (p. 354), and that "[s]o much of the deci-

sion as imposed the condition and reserved the right to revoke the permission is void and of no force."

In *Brustein* v. *Zoning Commission,* 151 Conn. 101, 105, 193 A.2d 523, the Bridgeport zoning commission granted an application for a change of zone to permit the erection of an apartment house but because of the need to widen the highway to relieve traffic congestion it specified that the change would become effective only when the owner and developer of the tract granted an easement for highway purposes over a portion of the tract adjoining the highway. Although the easement was later granted this court held that the action of the commission could not be sustained since the mere execution of the instrument granting the easement to the city without an actual widening of the traveled portion of the highway did not, and could not, solve the traffic problem and "[s]o long as traffic congestion remains a major problem,' the change of zone should not be granted."

As we have noted, the present case involving a permit for the use of a design development district granted by a planning and zoning commission differs from these cases in the material respect that the commission itself determined precisely what on-site and off-site changes should be effectuated "so that the health, safety and general welfare are insured as such development occurs." Westport Zoning Regs., c. 4A (1965). The commission then made the issuance of the permit conditional upon the effectuation of those changes. Clearly, the commission had no jurisdiction over the other public agencies involved nor could it order or require any of them to do anything to comply with the specified conditions. But unless the other public agencies involved, whether motivated by public interest, duty, or persuasion, did take the necessary action to comply with

the off-site conditions, then, under the provisions of the conditional permit and the Westport regulations relating to certificates of occupancy the applicant could not make the contemplated use of the property.

Without always clearly distinguishing between the diverse functions and authority of planning commissions, zoning commissions, planning and zoning commissions and zoning boards of appeal and cases involving variances, exceptions and permits for the use of design development districts or "floating zones," a general rule has frequently been stated, as most recently in *Stiles* v. *Town Council,* 159 Conn. 212, 221, 268 A.2d 395, that "a change of zone which is dependent for its proper functioning on action by other agencies and over which the zoning commission has no control cannot be sustained unless, at least as in the *Luery* case, [150 Conn. 136, 187 A.2d 247,] the necessary action appears to be a probability." See the *Farina, St. Andrew's Church* and *Brustein* cases, which we have just mentioned and also *Faubel* v. *Zoning Commission,* 154 Conn. 202, 224 A.2d 538, *Luery* v. *Zoning Board,* 150 Conn. 136, 187 A.2d 247, *Whalen* v. *Town Plan & Zoning Commission,* 146 Conn. 321, 150 A.2d 312 and *Gordon* v. *Zoning Board,* 145 Conn. 597, 145 A.2d 746.

Before further discussing the general statement of this principle upon which the plaintiffs rely we consider the effect of its application to this case. Even applying it strictly does not benefit the present plaintiffs and they have not been aggrieved by the off-site conditions imposed by the defendant commission. In effecting the change of zone the commission expressly found that "major roads are immediately available to the site to serve its traffic needs and lead into a system of arteries . . . which provide an excellent overall traffic circulation facil-

ity for demands produced by this area." It further expressly found that "[t]he road system is capable of handling the demands in an adequate fashion." This finding was amply supported by the testimony of a traffic expert who, at the hearing, stated that the highways adjacent to the site are "fully capable of carrying present traffic plus the new volumes that may be added by the location of Famous Schools on the site." Nevertheless, in granting the special use permit the commission imposed the off-site conditions, "[i]n order to insure efficiency and safety." Also, from the representations made by the plaintiffs' counsel, the testimony at the hearing from both the first and second selectmen of the town and the presumption that any necessary highway changes and traffic controls will be provided by the responsible public officials; see General Statutes §§ 13a-99, 14-298, and *Luery* v. *Zoning Board,* supra, 145; the commission could reasonably conclude that the off-site improvements it specified would probably be made. Accordingly, even without the imposition of the off-site conditions to the granting of the special use permit "to insure efficiency and safety" the commission would have been justified under the rule as stated in *Stiles* v. *Town Council,* supra, in changing the zone and then granting the design district use permit. If anyone was aggrieved by the imposition of the additional off-site requirements it was not the plaintiffs but F.A.S., and F.A.S. has raised no objection but, rather, has stated that it "is ready, willing and able to make safe roads even safer to handle the increased volume." We find no invalidity or illegality in the action of the defendant commission because of the conditions it imposed on the issuance of the design development use permit issued to F.A.S.

The plaintiffs' reliance upon the general principle

has prompted us to reexamine its history and validity and the cases which have given rise to its adoption. In this connection it is necessary to bear in mind the diverse functions of zoning commissions and zoning boards of appeal and the distinction among special permits, exceptions and variances. The latter distinction is well pointed out in *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 636, 109 A.2d 256: "[A] variance is authority extended to the owner to use his property in a manner forbidden by the zoning enactment, while an exception allows him to put his property to a use which the enactment expressly permits. The right to attach reasonable conditions to the grant of a variance is not dependent upon express authorization from the lawmaking body. 1 Yokley, Zoning Law and Practice (2d Ed.) § 144; Bassett, Zoning, p. 128; 58 Am. Jur. [, Zoning,] 1046; see *Kelley* v. *Board of Zoning Appeals,* 126 Conn. 648, 652, 13 A.2d 675. Were this not so, the board, for lack of such right, might be forced, at times, to deny a variance and thus to perpetuate an owner's plight crying for relief. But as regards the authorization of a special exception a different situation prevails. . . . [T]he conditions permitting an exception must be found in the regulations themselves, and these conditions, if any, may not be altered." See also *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals,* 140 Conn. 527, 531, 102 A.2d 316.

The concept of "floating zones" giving rise to design development districts received legislative approval in 1959 with an amendment to § 8-2 of the General Statutes. "[T]he legislature added the provision authorizing the adoption by a zoning commission of regulations which would allow a use subject to standards set forth in the regulations and under

special conditions, after the obtaining of a special permit. The power of local zoning authorities was thus broadened, and they were allowed to impose certain standards and conditions on the use of property when the public interest required it. Under the amended statute, the zoning commission could by regulation reserve to itself or delegate to any of the other specified agencies power to grant the special permit or special exception." *Summ* v. *Zoning Commission,* 150 Conn. 79, 86, 186 A.2d 160.

This court has recognized the legality of floating zones, when properly applied, in a number of other decisions. *Hawkes* v. *Town Plan & Zoning Commission,* 156 Conn. 207, 240 A.2d 914; *Dooley* v. *Town Plan & Zoning Commission,* 154 Conn. 470, 226 A.2d 509; *Luery* v. *Zoning Board,* 150 Conn. 136, 187 A.2d 247. In *Sheridan* v. *Planning Board,* 159 Conn. 1, 16, 17, 266 A.2d 396, this court noted: "While the concept of a floating zone is similar to the established power of a zoning board to grant special exceptions, the two types of regulation may be distinguished. The special exception is the product of administrative action, while the floating zone is the product of legislative action. 1 Anderson, American Law of Zoning § 5.16. Further, if a landowner meets the conditions set forth for a special exception, the board is bound to grant one, but in the case of a floating zone discretion is maintained and additional limitations may be imposed—more control is retained by the zoning board because it is acting legislatively. 'The Connecticut Law of Zoning (Part A),' 41 Conn. B.J. 262, 293. . . . This legislative function meets the need for flexibility in modern zoning ordinances since the exact location of the new zone is left for future determination, as the demand develops, and applications are granted which meet all conditions

specified by the board. See 'The Connecticut Law of Zoning (Part A),' 41 Conn. B.J. 262, 290–93. Thus, a floating zone provides more control over changes than does the granting of special exceptions, as noted above, with no greater likelihood of creating incompatible uses, and with no less forewarning than precedes the granting of a special exception. 1 Anderson, loc. cit."

As the trial court aptly noted in its memorandum of decision, such a project as that which gives rise to the present appeal "involves an interplay of governmental functions in the town." No single involved agency has the authority to order another to act or direct how it shall act but unless one of them moves, even though conditionally, the desired result could not be accomplished in such a circumstance as this. "[I]n this day of keen competition to attract industry and business to a state or to a particular locality, public officials are expected to cooperate in helping an industry to locate in their community"; *Peterson* v. *Norwalk,* 150 Conn. 366, 376, 190 A.2d 33; but it is hardly reasonable to expect that a highway authority or traffic authority would make the necessary expenditures and changes without knowing that when such work was completed the planning and zoning commission would approve and permit the project which the work was designed to make possible, nor, logically, should the commission grant an unconditional permit for a project when in its judgment the project was impermissible unless off-site work were done. In such circumstances it is entirely reasonable and logical that the planning and zoning commission which is entrusted with large powers in connection with city planning and zoning and municipal improvements (including the widening of streets; General Statutes § 8-24) should be the

agency to make the first move and the decision as to the conditions under which it would approve the issuance of a permit for the use of a designed development district. This is so even though the project may subsequently fail to materialize because one or more of the conditions has for any reason not been met.

With the recent legislative indication of approval of greater flexibility in modern zoning administration and the development of the floating zone concept, the strict application of the rule as stated in *Stiles* v. *Town Council,* 159 Conn. 212, 221, 268 A.2d 395, to instances of exceptions and special use permits may often prevent desirable changes where the accomplishment of the change depends on cooperative or dependent action by the zoning authority and other municipal agencies over which it has no control. In such instances it is, of course, desirable, where feasible, that the zoning authority ascertain that there is a reasonable probability that such action will eventuate. In many circumstances, however, other municipal agencies may properly be reluctant to commit themselves to a course of action before knowing that if such a commitment is made it will meet such conditions as the zoning authority will deem advisable. Such a stalemate is clearly undesirable. Under such circumstances, where cooperative action is necessary to accomplish a desirable result, a stalemate can best be avoided by approval which may be conditional. We would, accordingly, hold that where an exception or a special permit is granted and the grant is otherwise valid except that it is made reasonably conditional on favorable action by another agency or agencies over which the zoning authority has no control, its issuance will not be held invalid solely because of the existence of any such condition.

The second claim of the plaintiffs is that the action of the defendant commission was invalid because it constituted spot zoning. We had recent occasion to summarize the cases defining spot zoning. *Furtney* v. *Zoning Commission,* 159 Conn. 585, 600, 601, 271 A.2d 319. As we there pointed out, it is " 'a provision in a zoning plan or a modification in such a plan, which affects only the use of a particular piece of property or a small group of adjoining properties and is not related to the general plan for the community as a whole.' . . . Spot zoning is an 'attempt to wrench a single small lot from its environment and give it a new rating that disturbs the tenor of the neighborhood.' . . . Two elements must coexist in order to constitute spot zoning. First, there must be a change in zone applicable only to a small area. Second, this change must be out of harmony with the comprehensive plan for the good of the community as a whole." See also *Malafronte* v. *Planning & Zoning Board,* 155 Conn. 205, 210, 230 A.2d 606; 1 Rathkopf, Zoning and Planning (3d Ed.), c. 26.

We find no error in the conclusion of the trial court that this claim of spot zoning was not substantiated. The record discloses that the amendment to the plan of development and rezoning of the sixty-two-acre tract as a design development district was decided on by the planning and zoning commission only after careful study and deliberation. It discloses that the commission concluded that the proposed use conformed to the town plan, was compatible with the surrounding area because the tract was unsuitable for residential development due to changed conditions, was beneficial to the general welfare of the town, conserved the value of the buildings and was the most appropriate use of the land considering factors of health, traffic and safety

and the general statutory requirements. The decision of the defendant commission involved the resolution of fairly debatable questions which were within its province to decide acting in its legislative capacity. *Sheridan* v. *Planning Board,* 159 Conn. 1, 16, 266 A.2d 396; *Zandri* v. *Zoning Commission,* 150 Conn. 646, 650, 192 A.2d 876. Its action did not result in spot zoning and appears to have resulted from the proper and fair exercise of its discretion, with proper motives and for valid reasons.

The next claim of error assigned by the plaintiffs arises from the appearance at the hearing before the defendant commission of the first selectman of Westport, John J. Kemish, and a former first selectman, Herbert E. Baldwin. Kemish, as the first selectman, was by virtue of the provisions of General Statutes § 7-12a an ex officio member of the planning and zoning commission and as such was privileged, if he cared so to do, to sit with the commission in the hearing and in the deliberative and executive sessions of the commission but was not entitled to vote. Between them, Kemish and his predecessor Baldwin, had appointed all the members of the commission, and as first selectman Kemish, under the provisions of the Westport charter, had discretionary power to remove from office any member of the commission after notice and hearing.

Of the sixty-two acres involved, four were owned by the town of Westport and under option to F.A.S., conditioned on the change of zone and the granting of the special permit. At the hearing, Kemish, in his capacity as the chief executive officer of the town, spoke in favor of the design district proposal. He commenced his endorsement of the proposal with a statement that in order to present his views he had completely abstained from participating and

sitting with the commission and would abstain from sitting in the deliberation or executive session. Baldwin spoke in favor of the proposal as chairman of the Westport Improvement and Development Committee.

It is the claim of the plaintiffs that the appearances of both Kemish and Baldwin were contrary to the provisions of §§ 8-11 and 8-21 of the General Statutes, which provide that no member of any planning or zoning commission shall appear for or represent any person, firm, corporation or other entity in any matter pending before the commission. The plaintiffs claim that as a result of these appearances the action of the commission is invalid. With this claim we do not agree. The statutory prohibition is certainly not applicable to Baldwin as he obviously did not come within its terms. It may well be doubted that it was applicable to Kemish who appeared as the chief executive officer of the municipality and not to represent the applicant in the proceedings. Furthermore, each of the statutes goes on to provide that in the event of such a disqualification the remaining members of the commission or board "shall choose an elector to act as a member of such commission or board in the hearing and determination of the particular matter or matters in which the disqualification arose." Kemish was an ex officio member of the commission only because of his position as first selectman and had no vote. Since in the absence of clear legislative direction to the contrary it would not be assumed that the remaining members of the commission were authorized to choose a substitute first selectman who could thereupon serve on the commission ex officio it may well be doubted that the statutes were intended to apply to an appearance by the chief executive offi-

cial of the community. It is, however, unnecessary to decide that point in this case since the plaintiffs raised no objection at the hearing to Kemish's appearance. As we have said before, "modern procedural concepts 'regard with disfavor the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, the assignment of such errors as grounds of appeal.'" *Fletcher* v. *Planning & Zoning Commission*, 158 Conn. 497, 507, 264 A.2d 566. Finally, as we said in a similar situation, the statute neither makes Kemish's action a crime "nor renders the board's reception of his evidence a reason for denying the application." *Luery* v. *Zoning Board*, 150 Conn. 136, 147, 187 A.2d 247.

The plaintiffs' final assignment of error is a general assertion that the trial court was in error in overruling their claims that the actions of the defendant commission were arbitrary, illegal and invalid. We have already discussed and found no merit to the plaintiffs' specific claims of illegality and invalidity. We find none in their assertion of arbitrariness. Whether the commission in this case should have amended the plan of development, rezoned the subject sixty-two-acre area and issued the special permit for the use of the design development district are fairly debatable questions which were within the province of the defendant commission to resolve. *Zandri* v. *Zoning Commission*, 150 Conn. 646, 650, 192 A.2d 876; *Kutcher* v. *Town Planning Commission*, 138 Conn. 705, 709, 88 A.2d 538. The commission appears to have exercised its discretion fairly, with proper motives and for valid reasons and the carefully prepared record of its findings and

conclusions amply supports its decisions. "Courts cannot substitute their judgment for the wide and liberal discretion vested in the local zoning authority when it is acting within its prescribed legislative powers. *Summ* v. *Zoning Commission,* 150 Conn. 79, 89, 186 A.2d 160; *DeMeo* v. *Zoning Commission,* 148 Conn. 68, 75, 167 A.2d 454; *Tarasovic* v. *Zoning Commission,* . . . [147 Conn. 65, 71, 157 A.2d 103]. The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution. See *Wade* v. *Town Plan & Zoning Commission,* 145 Conn. 592, 595, 145 A.2d 597. It is only where the local zoning authority has acted arbitrarily or illegally and thus abused the discretion vested in it that the courts can grant relief on appeal." *Stiles* v. *Town Council,* 159 Conn. 212, 218, 219, 268 A.2d 395. The trial court did not err in sustaining the action of the commission and in dismissing the appeal.

There is no error.

In this opinion THIM and SHAPIRO, Js., concurred.

ALCORN, C. J. (dissenting in part). I agree with the majority opinion insofar as it concludes that the change of zone can be sustained. Although the language and reasoning used in the decision announced by the planning and zoning commission indicates that it was influenced, in granting the change of zone, by the conditions which it subsequently attached to the grant of the special permit, nevertheless the factors favorably determined by the commission aside from those conditions were sufficient to justify the change of zone.

I disagree with the majority opinion, however, in its departure from our settled rule most recently restated in *Stiles* v. *Town Council,* 159 Conn. 212, 268 A.2d 395, namely, that commission action which is dependent for its proper functioning on action by other agencies over which the commission has no control is improper unless the necessary action appears to be a probability. There was nothing presented to the commission from which it could properly conclude that it was reasonably probable that any of the several governmental agencies which would be affected by the off-site conditions imposed would collaborate in making them effective.

A reason for and the soundness of our rule is demonstrated in the present case. One of the off-site conditions imposed upon the granting of the special permit in this case is that "F.A.S. shall construct a school-bus parking area on the west edge of Newtown Turnpike opposite Oakwood Lane on the Town property, located there to serve school children in a safe manner." Obviously, the commission considered this a necessary requirement as a safety measure for the school children. There was no evidence before the commission even to suggest that the school authorities would direct that the school buses use this parking area. Of course, the commission itself had no authority to compel the school buses to use it. If, however, F.A.S. constructed the parking area as specified the condition imposed would be fully met and, the other conditions laid down being complied with, the special permit would issue. Then, if the area was not thereafter used by the school buses, the prime objective which the commission sought to achieve and considered essential, namely, the safety of the school children, would be sacrificed to mere formal compliance with the con-

dition. To make the special permit "reasonably conditional on favorable action" by the school authorities, as the majority opinion does, offers no assurance that the essential objective of safety for the school children will ever be attained.

The off-site conditions imposed for the issuance of the special permit are open to still other objections. One condition is that between 8 a.m. and 8:35 a.m. and between 4:25 p.m. and 5 p.m. F.A.S. shall provide one "off-duty regular or special policeman" as a traffic guard at each of three separate points in the access roads "to direct traffic and to provide for safety in the area." In other words, the commission assumes to specify how many of a certain class of employees F.A.S. shall hire to do a certain job, at certain times, and at certain places. The commission has no power, by statute or regulation, to extend its function beyond the zoning use of land and buildings. It has no authority to impose conditions on this detail of the off-premises operation of F.A.S.'s business. *Bernstein* v. *Board of Appeals,* 60 Misc. 2d 470, 302 N.Y.S.2d 141; 2 Rathkopf, Zoning and Planning (3d Ed.), 1969 Cum. Sup., pp. 139, 208.

Other off-site conditions relate to regrading roadsides, highway construction and widening, and roadside planting. "[A]t least 50% of the cost" of a large part of this work is imposed on F.A.S. The rest of the work would be at public expense. No estimate of the cost of any of this work was disclosed to the commission. The commission is permitted, under chapter 9 of the zoning regulations, to grant a special permit "subject to appropriate conditions and safeguards." Appropriate conditions must be reasonable conditions. The cost to the public of the required work was a material consideration. There is nothing in this record from which the court could

determine the reasonableness of any of these conditions. *Bernstein* v. *Board of Appeals,* supra.

The majority opinion states that if anyone was aggrieved by the imposition of the off-site conditions "it was not the plaintiffs but F.A.S." and F.A.S. has not complained. The court, however, concluded and adjudged that the plaintiffs were aggrieved by the action of the commission and that conclusion and judgment is not contested. Consequently, there is no basis on this record for considering whether F.A.S. is the only party which could be heard to complain of the off-site conditions imposed on the issuance of the special permit.

In my judgment the trial court did not err in dismissing the plaintiffs' appeal from the action of the planning and zoning commission in approving a change of zone, but the appeal from the commission's action in granting a special permit in that zone on the conditions attached should have been sustained.

RYAN, J. (dissenting in part). I am unable to agree with that portion of the majority opinion wherein the action of the trial court in dismissing the plaintiff's appeal as to the granting of the special permit is approved. A change of zone or the granting of a special use which is dependent for its proper functioning on action by other agencies and over which the zoning commission has no control cannot be sustained unless the necessary action appears to be a probability. *Stiles* v. *Town Council,* 159 Conn. 212, 221, 268 A.2d 395; *Farina* v. *Zoning Board of Appeals,* 157 Conn. 420, 254 A.2d 492; see *Faubel* v. *Zoning Commission,* 154 Conn. 202, 210, 224 A.2d 538; *Brustein* v. *Zoning Commission,* 151 Conn. 101, 105, 193 A.2d 523; *Luery* v. *Zoning Board,* 150 Conn.

136, 145, 187 A.2d 247; *Whalen* v. *Town Plan & Zoning Commission,* 146 Conn. 321, 326, 150 A.2d 312; *Gordon* v. *Zoning Board,* 145 Conn. 597, 603, 145 A.2d 746. This does not mean that a zoning commission cannot act because action by local and state highway departments or other governmental agencies will be required. In *Stiles,* supra, where extensive action by other agencies, both state and local, was required, there was evidence before the zoning authority from which a finding could be made that it was probable that the appropriate action would be taken. Under these circumstances the action of the zoning authority in changing the zone and granting a special use was upheld. In the present case no such evidence was presented.

I am particularly concerned about the following language in the majority opinion: "With the recent legislative indication of approval of greater flexibility in modern zoning administration and the development of the floating zone concept, the strict application of the rule as stated in *Stiles* v. *Town Council,* 159 Conn. 212, 221, 268 A.2d 395, to instances of exceptions and special use permits may often prevent desirable changes where the accomplishment of the change depends upon cooperative or dependent action by the zoning authority and other municipal agencies over which it has no control. In such instances it is, of course, desirable, where feasible, that the zoning authority ascertain that there is a reasonable probability that such action will eventuate. In many circumstances, however, other municipal agencies may properly be reluctant to commit themselves to a course of action before knowing that if such a commitment is made it will meet such conditions as the zoning authority will deem advisable. Such a stalemate is clearly undesirable. Under such

circumstances where cooperative action is necessary to accomplish a desirable result a stalemate can best be avoided by approval which may be conditional. We would, accordingly, hold that where an exception or a special permit is granted and the grant is otherwise valid except that it is made reasonably conditional upon favorable action by another agency or agencies over which the zoning authority has no control, its issuance will not be held invalid solely because of the existence of any such condition."

The plain meaning of this holding is that a zoning authority should follow the rule of *Stiles, Farina* and *Faubel* when it deems it feasible and that it may ignore it when it sees fit so to do by making its action "reasonably conditional upon action by another agency, or agencies over which the zoning authority has no control." The result of such a ruling will be chaos instead of order.

The minutes of the defendant commission contain the following findings concerning traffic and safety as related to the application for the change of zone: "The road system is capable of handling the demands in an adequate fashion. In order to insure efficiency and safety, some physical improvements, as well as supervisory control over traffic movements at peak times will be necessary.... Although we believe the 500′ of Partrick Road which will serve as the primary access to the site is capable of handling the demand, improvements are considered necessary to provide efficiency and safety. These improvements will be discussed under the Special Permit consideration. . . . Other safety considerations are built-in to requirements for improvements and traffic control covered in the Special Permit requirements."

The commission then proceeded to approve the

change of zone and considered the application for a special permit under the provisions of chapter 9 of the regulations. The authority of the commission is limited by the regulations to the imposition of on-site conditions for the approval of a special permit. There is no authority in the regulations to impose off-site conditions. The commission voted to grant a special permit in accordance with numerous conditions. The on-site requirements were carefully considered and the plaintiffs raise no question as to their validity, since the imposition of such conditions is authorized by the regulations. The commission also laid down certain other conditions and off-site requirements. It required as a condition that Partrick Road be widened to three lanes for a distance of 500 feet and for evergreen plantings to be made on either side of the road; that the applicant pay at least 50 percent of the cost of the road improvements and be solely responsible for providing the required trees along the roadside. It directed the applicant to regrade the embankment on the southeast side of the intersection of Newtown Turnpike and to relocate a section of Newtown Road. It also required that the applicant provide three traffic policemen at various locations on public highways at certain hours of the day to direct traffic and to provide safety for the area. It assumed the mantle of the traffic authority by designating the direction of the flow of traffic on public highways and the location of signs to be placed there. Another condition required the applicant to construct a school bus parking area on the west edge of Oakwood Lane on town property to serve school children in the area in a safe manner. The desire to achieve safety for the residents of Westport is commendable, but the commission had absolutely no power or authority to do these things.

An examination of the zoning regulations applicable to the granting of a special permit indicates that the authority to impose conditions is limited to such as may be carried out on the site of the property in question. "Where, as here, a special exception . . . is involved, the board may impose conditions only to the extent allowed by the zoning regulations themselves. *Huhta* v. *Zoning Board of Appeals,* 151 Conn. 694, 697, 202 A.2d 139; *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 636, 109 A.2d 256." *Shulman* v. *Zoning Board of Appeals,* 154 Conn. 426, 429, 226 A.2d 380. "The improvement of public streets involves the expenditure of public funds and the approval of municipal agencies over which the . . . [commission] has no control." *Farina* v. *Zoning Board of Appeals,* supra, 424.

Even if regulations had been adopted authorizing the defendant commission to impose such conditions, such regulations would be invalid. To determine whether a regulation was within the authority of the commission to enact we do not search for a statutory prohibition against such an enactment; rather, we must search for statutory authority for the enactment. *Avonside, Inc.* v. *Zoning & Planning Commission,* 153 Conn. 232, 236, 215 A.2d 409. No administrative or regulatory body can modify, abridge or otherwise change the statutory provisions under which it acquires authority unless the statute specifically grants it that power. *Finn* v. *Planning & Zoning Commission,* 156 Conn. 540, 546, 244 A.2d 391; *State ex rel. Huntington* v. *McNulty,* 151 Conn. 447, 449, 199 A.2d 5. Section 8-2 of the General Statutes provides for no such grant of authority to planning and zoning commissions.

The trial court was not in error in dismissing the

plaintiffs' appeal from the action of the defendant commission in approving a change of zone. There was error in the action of the defendant commission in granting the special permit and the case should be remanded to the Court of Common Pleas with direction to sustain the plaintiffs' appeal as to the granting of the special permit.