[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. Introduction and Factual Background
A.
This appeal concerns a denial by the defendant Planning and Zoning Commission of the Town of South Windsor (hereinafter, the Commission) of an application submitted by the plaintiff Joseph Misky, Jr. on April 22, 1991 to rezone 16.05 acres to allow the construction of 26 single family units. (Return Item 1). The parcel is located on Avery Street and is currently zoned AA-30, a residential zone allowing single family homes on 40,000 square foot lots. The application sought a change of zone to DR2 (Designed Residence Zone)[1] and included a General Plan of Development.
B.
The public hearing was held on May 28, 1991 and Attorney Peter Alter, representing the plaintiff, traced the history of the application. (Return Item 18). He noted that the present proposal is in conformance with the 1982 Town Plan CT Page 9425 of Development (Return Items 18, p. 3; 21, p. 9-10) and envisages one dead-end road from Avery Street with three cul-de-sacs leading to 26 "small" (1,000 square foot to 1,438 square foot) single family homes. The proposed development would have a maximum density of 1.61 units per acre or 2.3 units per net buildable acre. South Windsor's designed residence zone provides a density bonus for affordable units and as this proposal included six affordable units, the maximum density could be 43 units.[2] (Return Items 18, p. 4; 11, p. 57).
The proposal contains 9.8 acres of open space to the rear of the property (61% of the site) or 16,000 square feet per unit. This is well in excess of the required 3,500 square feet per unit. (Return Items 11; p. 64; 18, p. 4). The project is also set back from the street and incorporates a planted earthern berm to buffer the site from street view. (Return Items 13, sheet 3; 18, p. 5).
Mr. Alter indicated that the affordable units would be interspersed within the project and essentially indistinguishable from the other units. (Return Item 18, p. 6). They would cost approximately $119,000.00 to $126,000.00 depending on the style. The remaining 20 units would range from $126,000.00 to $155,000.00. (Return Item 18, p. 7). He reported that the traffic study prepared by Bubaris Traffic Associates indicated no negative impact as the development would generate only 24-31 vehicles per hour during peak commuter periods. (Return Items 8, p. 7; 18, p. 9). The study also indicated the sight line to be satisfactory. (Return Items 8, p. 7; 18, p. 9). Sargeant Gerald Lewis of the South Windsor Police Department indicated that at least two trees would have to be removed. (Return Items 2; 9; 18, p. 10).
Michelle Lipe, the Assistant Town Planner, also reviewed the project covering many of the items discussed by Mr. Alter. She noted that the project was consistent with the Town Plan and that the affordable units would become "part of the Town's Affordable Housing Program" and sold "according to guidelines set forth in the Town Council Moderate Housing Program." (Return Items 18, p. 11; 24). The units would count toward the five year goal of 143 units of which 90 have been approved. (Return Item 18, p. 11). She reviewed the open space proposal noting "it would tie nicely with the existing open space areas on Countyview Estates and the open space at Phillip Smith School." (Return Item 18, p. 12). Public water CT Page 9426 and sewers are available.
Approximately 12 citizens spoke in opposition to the project. They expressed concern over the change of zone, impact on the schools, high water table, overdevelopment, form of ownership, lack of a buffer zone, and financial impact. The Commission asked questions about the buffer areas, the traffic study, the unit mix, road and sidewalk layout, and school bus access. After final comments from Attorney Alter, the hearing was closed.
On July 30, 1991, at a special meeting, the Commission voted to deny the application. (Return Item 19). The Commission discussed the town's affordable housing program noting that there was not enough differential between the restricted affordable homes and the nonrestricted inexpensive homes.[3] (Return Item 19, p. 2-3, 5). Additionally, members discussed the general development of this area of town and the neighborhood opposition. Notice of the denial was published in the Journal-Inquirer on August 3, 1991 and a letter was sent to the applicant on August 8, 1991. This appeal was filed on August 14, 1991 and trial was held on August 27, 1992.
II. Discussion
A.
The plaintiff maintains that as this application involves affordable housing, the provisions of General Statutes8-30g et. seq., "Affordable Housing Land Use Appeals" (hereinafter, the Act) are applicable. This statute modifies judicial review of land development applications which include a certain percentage of affordable housing as defined in subsection8-30g(a)(1):
 "Affordable housing development" means a proposed housing development (A) which is assisted housing or (B) in which not less than twenty per cent of the dwelling units will be conveyed by deeds containing covenants or restrictions which shall require that such dwelling units be sold or rented CT Page 9427 at, or below, prices which will preserve the units as affordable housing, as defined in section 8-39a, for persons and families whose income is less than or equal to eighty per cent of the area median income, for at least twenty years after the initial occupation of the proposed development.
The Commission argues that the application does not meet this definition because there is no indication that the affordable units will be restricted to "persons and families whose income is less or equal to eighty per cent of the area median income." (Emphasis supplied). If this argument is correct, the plaintiff's application would be reviewed under traditional standards rather than the new burden switching mechanism set forth in 8-30g(c).[4]
A review of the application indicates that there is no claim that it is "assisted housing" as defined under subsection (A). See, generally, West Hartford Interfaith Coalition, Inc. v. Town Council of the Town of West Hartford, 7 Conn. L. Rptr. No. 10, 282 (September 28, 1992). The applicant does claim, however, that the proposal meets the second alternative, "deed restricted", under subsection (B). It must, therefore, meet the requirements of percentage of units to be set aside, price limitation, and time restriction. The application satisfies the first test as it proposes to set aside twenty percent of the units (6/26). (Return Items 13, zoning data block; 18, p. 4). Fulfillment of the second mandate, the restriction on income to those earning less than or equal to eighty per cent of the area median income, is not as clear. None of the applicant's documents reflect this restriction. Indeed, this application was made under South Windsor's Moderate Price Housing Program, which provides an income limitation at 100% of the median income of Hartford County. (Return Item 24, Art. III, Sec. 3; Plaintiff's Brief, pp. 1-2). Under this guideline, units could be sold to those people whose income exceeds eighty per cent of the area median income. (Emphasis supplied).
The analysis cannot stop here however. The South Windsor program limits both the selling and resale price to 2.5 times yearly income at the median income level as defined by the U.S. Department of Housing and Urban Development CT Page 9428 (H.U.D.). (Return Item 24, Art. I, Sec. 4; Art. V, Sec. 2). The median income for South Windsor, part of the Hartford Metropolitan Statistical area, is $46,700.00; eighty percent is $37,360.00. (Return Item 27). The maximum sales price at 2.5 times the median income is $116,750.00. Utilizing the H.U.D. methodology, on the other hand, allows the maximum sales price at the eighty per cent restriction to be $133,038.00. (Return Item 27). The stated sales price, as previously mentioned, ranged from $119,000.00 to $126,000.00 (Return Item 18, p. 7), a figure which exceeds the South Windsor limitation but not the Act's limitation.[5]
The third part of the definition is the 20 year time restriction on the affordability requirement. The legislature mandated that a development have restrictions that the units be sold at prices which will "preserve the units as affordable . . . for at least twenty years." General Statutes 8-30g(1). The application falters at this point. First, as mentioned, with South Windsor's limitation of resale at 2.5 times the median income, it is conceivable that the housing could be out of reach for those whose income is 80% of the median income.[6]
Moreover, and more importantly, this court notes that this application and record do not indicate any specific reference to a twenty year limitation. The South Windsor program has no specific time requirements and can be modified or terminated at any time. (Return Item 24, Art. VII, Secs. 1 2). Without any exact restriction that insures compliance with the Act, this court believes that this application, albeit well intentioned, cannot be deemed to be an application for affordable housing as defined by the Act.
B1.
This court's finding that the application does not fall under the Act does not end this review. Rather, this court will treat this appeal as a traditional zoning appeal. See, General Statutes 8-30g(e); Creative Development for Colchester, Inc. v. Colchester Zoning and Planning Commission, 5 Conn. L. Rptr. No. 4, 95, 96 (1991), Hennessey, J. ("even if a case is found not to be governed by the affordable housing statute, the court would nevertheless have jurisdiction over the subject matter") and Lantos v. Town of Newtown Planning CT Page 9429 and Zoning Commission, 5 Conn. L. Rptr. No. 9, 216 (1991), Fuller, J.
2.
General Statutes 8-8(a) restricts those people that may appeal a commission decision to those who are either aggrieved or those who own land which abuts . . . the land involved in the decision. Aggrievement must be both properly pleaded and proved. Walls v. Planning and Zoning Commission,176 Conn. 475, 479 (1979). At trial, the plaintiff testified that he has owned the subject parcel since 1987 and that his request for a zone change to construct the project was denied. This court found at trial, and reiterates herein, that the plaintiff has a specific and personal interest which has been injuriously affected by the Board's decision and is therefore aggrieved. Bossert Corporation v. Norwalk, 157 Conn. 279, 285
(1968).
C1.
The present case involves a decision of the Commission in its legislative capacity, Burnham v. Planning Zoning Commission, 189 Conn. 261, 265 (1983); First Hartford Realty Corporation v. Planning and Zoning Commission, 165 Conn. 533,540 (1973). In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the Commission must be upheld by the trial court if they are reasonably supported by the record. Calandro v. Zoning Commission,176 Conn. 439, 440 (1979).[7] The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. Calandro, supra, 440.
2.
At the July 30, 1991 meeting, Commissioner Gallicchio moved to deny the application stating:
 I'm going to make a motion that we don't accept it for those to reasons. That there is too drastic a change, that we are ahead of our goals, that all of the surrounding lots are larger lots and it does read in the regulations that if it effects CT Page 9430 the people in the surrounding area, that that's one of the reasons you can use to turn it down. (sic).
(Return Item 19, p. 12). As mentioned, the vote to deny was unanimous. On August 8, 1991, Chairperson Louise Evans wrote to the applicant both articulating and amplifying the reasons announced at the hearing.[8] (Return Item 10). One of the stated reasons was the reluctance to downsize the existing one acre zoning (AA-30) of the parcel. Such a reason is deemed valid, Cascio v. Town Council, 158 Conn. 111, 115 (1969); Hall v. Planning and Zoning Board, 153 Conn. 574 (1966), and as the issue is one that is "fairly debatable", it is within the province of the commission to decide in its legislative capacity. Lurie v. Planning and Zoning Commission, 160 Conn. 295,309 (1971). The action of the commission should be sustained if even one of the stated reasons is sufficient to support it. Goldberg v. Zoning Commission, 173 Conn. 23, 25
(1977).
III. Conclusion
Since this court has concluded that the application does not meet the statutory definition of affordable housing, it has reviewed this appeal under traditional standards.
As the Commission's action in denying the requested zone change cannot be said to be unreasonable, the appeal must be and is hereby dismissed.
MARSHALL K. BERGER, JR. JUDGE, SUPERIOR COURT