[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, John Shannon, Robert Shannon, and the Boston Private Bank and Trust Company (hereinafter, "The Shannons"), appeal from a decision of the defendant, the Planning Commission of Redding, in which the defendant approved and modified the plaintiff's application with conditions.
The primary issues presented in this appeal are as follows:
1) Are the Shannons estopped from raising an issue of bias and conflict of interest after allowing the chairperson to remain on the commission even though the chairperson was willing to recuse herself?
2) Can the commission modify the application with conditions, when one of the conditions requires the approval of the chairperson rather than the whole commission?
On May 16, 1996, the Shannons filed a subdivision application with the Redding Planning Commission. The application was presented to the commission on June 11, 1996, and a public hearing was held on July 23, 1996. On October 8, 1996, the Redding Planning Commission unanimously voted to modify and approve the application with conditions. Notice of the decision was published in the Redding Pilot on October 10, 1996. The Shannons commenced an appeal by service of process on October 24, 1996.
The court must first address the issue of estoppel and further review the record to see if a conflict of interest created a bias.
The Shannons appeal, in relevant part, on the ground that the CT Page 11689 "Commission's Chairman had a personal conflict of interest, participated in and voted on the application and drafted the resolution and conditions of approval[.]" (Amended appeal, ¶ 15 (i).) The claim is that the commission chairperson, Diane F. Taylor, was biased toward the Shannons' application and should not have been allowed to sit on the commission. It is argued that Taylor's conflict of interest derives from her ownership of property across from the subdivision parcel and further, that even if they had waived the opportunity to excuse the chairperson, Taylor's bias resulted in an unfair hearing and an abuse of due process. The commission responds that the waiver by the Shannons' counsel is an admission that he had no evidence of bias and that he did not consider her ownership of adjacent property to be a conflict of interest.
Claims of bias must be raised in a timely fashion. "The failure to raise a claim of disqualification with reasonable promptness after learning the ground for such a claim ordinarily constitutes a waiver thereof." (Internal quotation marks omitted.) Clisham v. Board of Police Commissioners,223 Conn. 354, 367, 613 A.2d 254 (1992).
Prior to the hearings, Taylor informed the Shannons' attorney that "the property [on application] is located across . . . from my property. I have no knowledge of the owners of the property, I have no interest in the property, and I have asked town counsel whether there is any need for me to disqualify myself. . . ." Although aware of a possible bias, the Shannons' attorney, nonetheless, stated on the record "that we . . . have no objection to your sitting on the matter" and consented to Taylor's participation in the hearing.
"Waiver is the intentional relinquishment of a known right." (Internal quotation marks omitted.) Dragan v. ConnecticutMedical Examining Board, 223 Conn. 618, 629, 613 A.2d 739
(1992). The Shannons waived their right to have Taylor disqualify herself, but chose not to.
On appeal, the Shannons now claim that Taylor's actions were biased and prejudicial to them. The Supreme Court has frowned upon a delayed claim of bias. Under "modern procedural concepts," the court "regard[s] with disfavor the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial CT Page 11690 proves unsatisfactory, the assignment of such errors as grounds of appeal." (Internal quotation marks omitted.) Fletcher v.Planning Zoning Commission, 158 Conn. 497, 507-08,264 A.2d 566 (1969).
Likewise, the court "will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the [hearing]. . . ." (Internal quotation marks omitted.) Clisham v. Board of PoliceCommissioners, supra, 223 Conn. 368.
The alleged misconduct or bias must be raised when it comes to the attention of the party making the claim. Hartford SteamBoiler Inspection Insurance Co. v. Industrial Risk Insurers,
Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 560722, (September 12, 1996, Wagner, STR.). See also Lurie v. Planning v. Zoning Commission, 160 Conn. 295,311, 278 A.2d 799 (1971)
The Shannons claim that Taylor had an affirmative obligation to disclose any personal opinions that might have affected the application process, and argue that any waiver that did occur was a result of Taylor's deliberate misrepresentation as to her personal interest in the case. Their contention is that even if they waived Taylor's conflict of interest, the proceedings were tainted and constituted a clear denial of fundamental fairness and due process and, further, that the post-public hearing comments of Taylor influenced the commission's decision to modify the subdivision plan.
The court concludes that the Shannons have waived the right to address any possible claims of bias and conflict of interest on the part of the planning and zoning commission chairperson. Aside from its estoppel finding, the court further finds that the record does not support the Shannons' claim of bias and conflict of interest.[1]
The Shannons describe several incidents where Taylor allegedly "initiated and led" a discussion concerning the subdivision. For example, at the start of one of the hearings, the Shannons contend that Taylor objected to the driveways on two of the lots located opposite her property. "I'm really quite concerned because whenever we have combined driveways it is up to the applicant to show that every lot can be served by a CT Page 11691 driveway." This discussion culminated in Taylor and another commission member agreeing to draft a new motion to approve and modify the application. It is further argued by the Shannons that Taylor was the one who made the initial motion to modify and approve the application with conditions.
The transcript reveals that Taylor was not alone in highlighting the flaws in the Shannons' application and that doubts raised by Taylor stemmed from concerns expressed by outside consultants to the commission. There is no indication in the record that Taylor inappropriately influenced the commission to decide the application at hand with her interests in mind. Indeed, the transcript shows that the idea to modify the plaintiff's application was first advanced by another member of the commission: "N. Almgren: `It looks more like a 4 lot subdivision.'" In addition, the idea to draft a new proposal was raised by someone other than Taylor. Moreover, any actions taken by Taylor and the rest of the commission in ultimately conditioning the application were in accordance with the duties and powers given to the board in the Redding Subdivision Regulations. Redding Regulations § 5.8.6.[2] (Commission's Exhibit A.) See also General Statutes § 8-26.
Public officials are presumed to have done their duty until the contrary appears. See Leib v. Board of Examiners forNursing, 177 Conn. 78, 84, 411 A.2d 42 (1979). The burden of proof is on the person making the accusation.[3] Rado v. Boardof Education, 216 Conn. 541, 556, 583 A.2d 102 (1990). The person must demonstrate actual bias or the existence of circumstances indicating a "probability of such bias too high to be constitutionally tolerable." (Internal quotation marks omitted.) Id.
Such a level of bias has not been proven.
The court next addresses whether the conditions imposed upon the application by the commission were outside the authority of the commission.
The Redding Planning Commission approved the subdivision application with several modifications and conditions. The plaintiff challenges conditions one through four of the commission's modification and approval.[4] These four conditions are interrelated and involve the commission's decision to reconfigure three of the planned lots into two. See TimberCT Page 11692Trails Corporation v. Planning Zoning Commission,222 Conn. 380, 389, 610 A.2d 620 (1992). (The court permitted a commission to reconfigure and reduce the number of lots.) The commission's reasons for the reconfiguration relied on both the "severe negative impact of the driveway construction" and the "irremedial sight line deficiencies" of one lot, and the unacceptable "poor sight line" of another lot.
The arguments proffered are that the conditions are illegal because: 1) substantial evidence does not support a finding of deficient sight lines; 2) the prohibition against further subdivision is illegal; 3) approval of the revised subdivisions by the commissioner violates the rule of Carpenter v. Planning Zoning Commission, 176 Conn. 581 (1979); and 4) the deeding of the subdivision rights to the Redding Land Trust would be improper.
The commission correctly acknowledges that its restrictions on resubdivision were an improper use of commission power.[5]
(Defendant's brief, p. 23.) The commission's abandonment of that issue leaves two remaining issues to be addressed: generally, whether substantial evidence supports the approval, with conditions, of the application and, in particular, whether the commission "by imposing conditions upon the approval of the subdivision which were not within the control of the applicant or the Commission, the Commission did not take one of the actions authorized on a subdivision application by section 8-26 of the General Statutes, resulting in an inferred approval of the subdivision." (Amended appeal, ¶ 15(k).)
The Shannons argue that either remaining condition (modification as a result of poor sight lines, or approval by the chairperson)[6] is sufficiently illegal to overturn the commission's approval with modifications. (Plaintiff's brief, pp. 15-20.) The commission's position is that these conditions are valid modifications that stem from the commission's power as set forth in the regulations. (Commission's brief, pp. 3-7, 20-22.)
In accordance with General Statutes § 8-26, "[a] planning commission . . . is only authorized to take one of three courses of action when considering a subdivision application: it can approve the application exactly as it was submitted; it can make changes to the application to ensure compliance with the subdivision regulations and compatibility with the municipality's comprehensive plan, and then approve the application as so CT Page 11693 modified; or it can disapprove the application outright."Moscowitz v. Planning Zoning Commission, 16 Conn. App. 303,308-09, 547 A.2d 569 (1988). Nothing in the statute "allows for the imposition of conditions upon the planning and zoning commission's approval of a subdivision plan . . . ." Carpenterv. Planning Zoning Commission, 176 Conn. 581, 592,409 A.2d 1029 (1979).
"[I]t is the nature of the underlying action taken by the planning commission that will determine its legality, not whether it is phrased in the terms of a `modification' or `conditional approval.'" (Emphasis omitted.) Moscowitz v. Planning ZoningCommission, supra, 16 Conn. App. 311.
The commission cannot subject a subdivision to a condition not authorized by statute or where the condition is not within the control of either the commission or the applicant. Carpenterv. Planning Zoning Commission, supra, 176 Conn. 597. The exception to this rule allows a conditional approval by an outside party only when the outside coordinate agency approval appears to be a reasonable probability. Id, 593.
However, where certain conditions are required by local regulations, the local regulations "provide sufficient authority for the imposition of the condition by the [commission]." Nicoliv. Planning and Zoning Commission, 171 Conn. 89, 94, 368 A.2d 24
(1976).
The imposition of conditions may be appropriate when the commission seeks to maintain the enumerated provisions of health and safety within the statute and the regulations. See Shailerv. Planning Zoning Commission, 26 Conn. App. 17, 28,596 A.2d 1336 (1991); Crescent Development Corporation v. PlanningCommission, 148 Conn. 145, 168 A.2d 547 (1961).
Any conditions imposed must be reasonable. See Vaszauskas v.Zoning Board of Appeals, 215 Conn. 58, 64, 574 A.2d 212 (1990). Under the catchall of health and safety, courts have allowed major modifications such as the reduction of the number of lots in a subdivision. Timber Trails Corporation v. Planning ZoningCommission, 222 Conn. 380, 389, 610 A.2d 620 (1992); Healthcon,Inc. v. Planning Commission, Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 545987, (October 16, 1995, Holzberg, J.). CT Page 11694
The court must inquire as to whether substantial evidence in the record supports the finding of the commission to approve the application with conditions.
The interrelated conditions in question are based primarily on the commission's findings that the sight lines for the driveways of the proposed subdivisions were inadequate and incompatible with zoning regulations.[7]
The relevant subdivision regulations concerning sight lines for driveways are: sections 4.1.3 (formerly 4.3.3), 4.5.13 (renumbered to 4.3.13) and 4.1.9 (formerly 4.3.9) of the Redding subdivision regulations.[8]
Section 4.1.3 (formerly 4.3.3) states in pertinent part "Every lot created by subdivision . . . shall own . . . sufficient area . . . for: (a) A driveway adequate to safely accommodate essential service and emergency vehicles and to meet the requirements of Section 4.3.13 [4.5.13] with minimal disturbance or alteration of the natural terrain and of the indigenous character of the land. The plans/maps shall show that these requirements can be met for each existing and proposed lot. . . ." (Commission's brief, attachment.)
Section 4.5.13 (renumbered to 4.3.13) provides in part: "Driveway intersections with the frontage road shall be planned for safety, considering adequate sight-line distances and the nature and volume of traffic. . . ."[9] (Commission's brief, attachment.)
Section 4.1.9 (formerly 4.3.9) reads in relevant part: "A common driveway designed to serve two, three or four contiguous lots whether front lots or rear lots may be approved by the commission only when each lot meets specified frontage and: (a) it can be demonstrated that each lot could be served by its own individual driveway which must meet the requirements of Section 4.1.3, 4.3.1 and 4.3.13 [4.5.13] of these regulations." (Commission's brief, attachment.)
The commission found that Lot No. 1 could not be approved due to the "severe negative impact of the driveway construction and the irremedial sight line deficiencies." (ROR, Item 7.) Although the record does not specifically note these regulations, regulations 4.1.3 (formerly 4.3.3.) and 4.5.13 (presently 4.3.13) were cited in the Commission's brief as a particular cause for CT Page 11695 disapproval. (Commission's brief, pp. 3-5.)
The commission further found that the accessway to Lot No. 2 was to serve as a common driveway. (ROR, Item 23, Tr., 9/24/96 hearing, p. 5.) As such, Lot No. 2 fell within the confines of subdivision regulation 4.1.9 (formerly 4.3.9.) The commission found that the "accessway/legal frontage to Lot #2 as shown on the Site Development Plan . . . has a poor sight line and is not acceptable." (ROR, Item 7.) Although the record does not specifically indicate the fact, the commission's brief cites Regulation 4.1.9 as having been violated. (Commission's brief, pp. 5-7.)
In their brief, the Shannons argue that the sight lines were but a minor deficiency and were treated as such throughout the majority of the time the application was on review. They further maintain that any sight line inadequacies may have been corrected routinely and without any modification of the existing subdivision plans.
The record reveals the following evidence. On June 6, 1996, a report from commission consultant John Hayes states that the sight lines "appear to be satisfactory." The minutes from the hearing of July 23, 1996, indicate that Steven Trinkaus, representing the Shannons, alluded to the fact that the sight lines are "more than adequate." On August 8, 1996, a memorandum from commission consultant Jim MacBroom expresses grave concern over the sight lines of both Lots No. 1 and No. 2. Accordingly, "[t]he driveway sight distance for lot #1 is very poor due to a high bank, a stone wall, and a road curve. The value shown on the applicants plans is incorrect. This driveway does not have a safe access point. . . . The alternate driveway location for Lot 2 has a poor sight distance similar to Lot # 1." On August 12, 1996, plaintiff's engineer, Steve Trinkaus, responded to MacBroom's concerns by stating that "[t]he high bank and stone wall are to be removed as necessary along the frontage of Lot #1 to obtain required 250' sight distance. The sight distance can be obtained." The record reveals that the next in-depth discussion of sight lines occurred on September 24, 1996, at a meeting of the Planning Commission.
The transcripts of that hearing show that the commission was still concerned by engineer MacBroom's comments regarding the sight lines. The commission's fears were not alleviated by Trinkaus' assurances that the sight lines could be obtained: "M. CT Page 11696 Nostin: `He doesn't say how?' . . . `We don't know that he can meet that condition.'" In part, the commission's confidence in Trinkaus' statement was shaken by the fact that Trinkaus failed to submit any revised plans or maps detailing his proposal to accommodate the sight lines of Lots No. 1 and No. 2 as required by regulation 4.1.3 (formerly 4.3.3). The commission also expressed reservation about the feasibility of Trinkaus providing such a plan: "N. Almgren: `No, I just think he's trying to do too much with that kind of property. The frontage and the sight-lines are prohibiting that kind of development.'"
"[T]he commission . . . was not required to give credence to any witness, including an expert." Kaufman v. ZoningCommission, 232 Conn. 122, 156, 653 A.2d 798 (1995). See alsoSamperi v. Inland Wetlands Agency, 226 Conn. 579, 597,628 A.2d 1286 (1993). "Although the commission [is] entitled to deny an application because it [does] not believe the expert testimony, however, the commission ha[s] the burden of showing evidence in the record to support its decision not to believe the expert — i.e., evidence which undermined either the experts' credibility or their ultimate conclusions." (Emphasis omitted.) Kaufman v.Zoning Commission, supra, 232 Conn. 156-57.
In the present case, the record contains evidence that undermined the credibility of Trinkaus. There is the statement of the commission's own expert, J. MacBroom, stating that "[t]he driveway sight distance for Lot #1 is very poor . . . [and] [t]he value shown on the applicants plan is incorrect." (ROR, Item 11.) The record further reveals that MacBroom's comments concerning the likelihood of obtaining sight lines reinforced doubts the commission already had about the application. (ROR, Item 23, Tr., 9/24/96, p. 4.)
Secondly, the commission perceived the failure of the Shannons to submit any new subdivision plans or maps as undermining Trinkaus' statement that the sight lines could be obtained. "Jim [MacBroom] has told me that that is not going to be possible and if Steve [Trinkaus] thought that it would be he should have drawn a new map showing the whole thing — to plot it out as to how he was going to do it. . . ."
Where the agency has stated the reasons for its decision, the court is not at liberty to probe beyond them. DeMaria v.Planning and Zoning Commission, 159 Conn. 534, 541, 271 A.2d 105
(1970). "It should not attempt to search out and speculate upon CT Page 11697 other reasons which might have influenced some or all of the members of the commission to reach the commissions's final collective decision." Id. The commission's action should be sustained if even one of the stated reasons is sufficient to support it. Property Group, Inc. v. Planning and ZoningCommission, 226 Conn. 684, 697, 628 A.2d 1277 (1993).
The court must determine whether the Commission's decision is reasonably supported by the regulations and by the evidence in the record. See Samperi v. Inland Wetlands Agency, supra,226 Conn. 587-88. (Setting forth the substantial evidence rule.)
The court concludes that the evidence in the record clearly supports the commission's approval of the application with the "special modifications and conditions."
Finally, the court must determine whether the chairperson's necessary approval of the new subdivision was an illegal delegation of the commission's power.
Due to the inadequacies of the sight lines for Lots #1 and #2, the commission modified the subdivision. Accordingly, paragraph one of the "Special Modifications and Conditions of Approval" states that "the 2.18 acres of the proposed Lot #1 shall be combined with Lots #2 and #3 . . . . [t]his resulting 7.88 acre parcel must be reconfigured into two new lots. . . ." ("Special Modifications and Conditions of Approval," ¶ 1.) This modification is also contingent upon the determination by the "Redding Planning Commission Chairman" that the subdivision plan meets the Redding subdivision regulations. (ROR, Item 7, "Special Modifications and Conditions of Approval," ¶ 1.)
The Shannons argue that this delegation of authority to the chairperson violates the principal behind the ruling ofCarpenter v. Planning Zoning Commission, 176 Conn. 581, 592,409 A.2d 1029 (1979). In Carpenter, the court prohibited the commission from conditioning an approval on the fulfillment of a condition which was outside the control of the commission or the applicant. It is further argued that the necessary approval of Taylor is outside the control of both the applicant and the commission and thus an invalid requirement. As such, they maintain that the modified subdivision plan must fail because of the illegal condition.
The commission postures that the approval of the new CT Page 11698 subdivision by the chairperson does not fall into the prohibited scope defined in Carpenter. Instead, the required approval of the chairperson is but an intermediate step prior to the approval of the new subdivision plan by the commission as a whole.
Redding subdivision regulation § 5.8.7 indicated that in cases where the commission modifies and approves an application, final approval of the application rests within the commission: "In instances where the Commission modifies and approves an application, it shall promptly advise the applicant of the required amendments to the map, plan or other application documents. No application shall be considered approved or in final form for filing until the Commission determines that the specified amendments have been submitted in proper form. . . . Upon determination that all submitted materials are in proper final form, the Commission's signature of approval . . . shall be affixed to the subdivision plan and the same released to the applicant. . . ." (Commission's Ex. A.) As evident from the subdivision regulations, the chairperson alone cannot singlehandedly approve (or disapprove) any submissions of modified plans.
In the present case, the approval of the chairperson as required in condition 1 of the "Special Modifications and Conditions of Approval" is more analogous to the situation inShailer v. Planning and Zoning Commission, 26 Conn. App. 17,596 A.2d 1336 (1991) than to Carpenter. In Carpenter, the Supreme Court agreed with the trial court finding that a "conditional approval," the fulfillment of which is within the control of neither the commission nor the applicant, is not one of the courses of action, i.e., "approval, modification and approval, or disapproval," available to a commission under General Statutes § 8-26. The court equated such a "conditional approval" as constituting a "failure to act." Carpenter v.Planning Zoning Commission, supra 176 Conn. 592.
In Shailer, the Appellate Court noted with approval the logic of Carpenter. However, finding that the legality of a commission action does not depend on the semantics of "modification" or "conditional approval," the Shailer court noted previous Supreme Court decisions upholding "conditions" bearing a rational relationship to the enumerated concerns of "health, safety and public welfare." Shailer v. Planning Zoning Commission, supra, 26 Conn. App. 28. CT Page 11699
The Shailer court agreed that the conditions imposed on the plaintiff by the planning and zoning commission were within the scope of health and safety. One of the conditions upheld by the court, was a condition requiring the town engineer to approve a subsequent subdivision. The court emphasized that the condition was "merely a restatement of the requirement in sections 8-25 and8-26 of the General Statutes . . . that prior to any subdivision of land, a plan for the subdivision . . . must be approved." Id., 29. The court interpreted that particular condition merely as requiring that any revisions be submitted to the Town Engineer for his approval prior to ultimate and final review by the commission.
In the present case, the condition calling for review by the chairperson is similar to such a preliminary review. As the commission emphasizes, review by the chairperson in no way infringes on the duties of the commission in ultimately reviewing and approving the subdivision revisions as required by § 5.8.7. (Commission's Exhibit A.)
The condition requiring the chairperson to approve any new subdivision plans of the applicant does not violate the rule announced in Carpenter which prohibits any conditions that are outside the control of the applicant or the commission.
The Shannons waived their right to raise any issues of bias or conflict of interest on the part of Chairperson Taylor. Furthermore, the approval of the application with conditions was based on substantial evidence that was before the commission. The conditions imposed by the commission were not outside of the commission's power to modify and approve an application.
The appeal is dismissed.
Mihalakos, J.