## EMILY S. SHAILER *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF HADDAM ET AL.
## (9681)

SPALLONE, DALY and LANDAU, Js.

Argued May 29—decision released September 24, 1991

*Helen F. Ryan,* with whom, on the brief, were *Sean E. Sweeney* and *Daniel B. Ryan,* for the appellant (plaintiff).

*Charles M. Rice, Jr.,* with whom were *Wesley W. Horton* and, on the brief, *Terrance D. Lomme,* for the appellee (defendant Cortul, Inc.).

SPALLONE, J. The plaintiff appeals from the judgment of the trial court affirming the defendant planning and zoning commission's approval of a subdivision proposed by the defendant Cortul, Incorporated (Cortul). On appeal to this court, the plaintiff claims that the trial court (1) improperly determined that the commission had complied with § 5.1 of its subdivision regulations, (2) improperly determined that the commission had complied with General Statutes § 8-26, and (3) committed several procedural errors in reaching its conclusion upholding the decision of the commission. We disagree with the plaintiff and affirm the judgment of the trial court.

The following facts are pertinent to this appeal. Cortul is the owner of a 108 acre plot of land located between Old Cart Road and Plains Road in Haddam. The plaintiff owns property on Old Cart Road next to Cortul's 108 acre plot, and on Plains Road across the street from Cortul's property.

Cortul applied to the commission for approval of a twenty-eight lot subdivision of its property on November 28, 1988. The cover letter submitted with that application, dated November 30, 1988, included requests for

an increase in the maximum permissible road grade from 10 to 12 percent, and a variance to modify the typical road grading section in a rock cut. The commission formally received Cortul's application at its January 18, 1989 meeting, and a public hearing date was set for March 6, 1989. A public hearing was held on March 6, 1989, and was continued to March 20, April 3, and finally to May 1, 1989.

During the course of the public hearings, Cortul submitted three different plans to the commission, incorporating changes in response to concerns of the commission and town staff. The plans included a proposed road (Cherry Creek Road), 200 feet of which was to be at a 12 percent grade, and a proposed intersection of Cherry Creek Road and Old Cart Road at a 4 percent grade. Both proposed grade situations exceed Haddam subdivision regulations §§ 4.4.7 and 4.4.8, respectively, by 2 percent and thus required a waiver of those regulations by the commission prior to approval of the plans. Waivers are permitted under § 5.1 of the regulations.

These grade variations were discussed several times at commission hearings, and the record clearly indicates that all interested parties were aware that certain waivers, which were included in the proposed plans submitted by Cortul, were required.[1]

At the commission's July 5, 1989 meeting, one of the commissioners orally moved to waive the town regu-

---

[1] At the March 6, 1989 public hearing, a letter signed by forty-one area residents was read to the commission by a local resident. It expressed the signatories' concern regarding, inter alia, "the safety of the proposed new road that will intersect Old Cart Road, i.e. a combination of the 12 percent steep grade, three (3) times the recommended grade, and two (2) percent above the town limit of 10 percent. . . ." The minutes of the April 3, 1989 public hearing indicate that Cortul's counsel orally confirmed that waivers were being requested. The minutes of a May 22, 1989 commission meeting indicate that the commission was aware that Cortul was requesting waivers.

lations with regard to the maximum grade of Cherry Creek Road and the maximum grade of the intersection of Cherry Creek Road and Plains Road. The minutes of the meeting indicate that both waivers were granted by a six to one vote, with commissioner Margaret Martin casting the sole vote in opposition. In addition, a separate form was used by the commission to record its vote. This "Motion for Waivers" form states that both waivers were granted by a six to one vote, and that the reason for granting each waiver was "[b]ecause waiver will introduce safer road design." That form, however, contained only five signatures of commissioners voting to grant the waivers. The signature of one commissioner, Peter Aduskevitch, was missing. The commission subsequently approved the subdivision with six attached conditions by a vote of four to three.

Thereafter, the plaintiff appealed to the Superior Court in the judicial district of Middlesex. At a June 20, 1990 hearing, it became apparent that the November 30, 1988 cover letter that was submitted by Cortul with its original application for subdivision approval was not included in the return of record. On July 11, 1990, the trial court granted Cortul's motion to amend the record to include this letter. The trial court subsequently upheld the decision of the commission. The plaintiff now appeals to this court.

We observe at the outset the sheer number of legal issues and contentions raised by the plaintiff on appeal. Although we have narrowed the issues to be discussed in this opinion, this torrent of claims serves neither the ends of justice nor the parties' own purposes.

" ' "Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the

number of assigned errors increases. Multiplicity hints at lack of confidence in any one [issue] . . . [M]ultiplying assignments of error will dilute and weaken a good case and will not save a bad one." Jackson, Advocacy Before the United States Supreme Court, 25 Temple L.Q. 115, 119 (1951).' *Jones* v. *Barnes,* 463 U.S. 745, 752, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983).

" ' "Most cases present only one, two, or three significant questions. . . . Usually . . . if you cannot win on a few major points, the others are not likely to help. . . . The effect of adding weak arguments will be to dilute the force of the stronger ones." R. Stern, Appellate Practice in the United States 266 (1981).' *Jones* v. *Barnes,* supra." *State* v. *Pelletier,* 209 Conn. 564, 567, 552 A.2d 805 (1989).

I

The plaintiff alleges that the trial court improperly determined that the commission had complied with § 5.1 of its subdivision regulations in granting the waivers. That section requires that requests for waivers be made by the applicant in writing, and that "the approval of any waiver requires a three-quarters vote of all members of the commission."[2] Section 5.1 essentially tracks the language of General Statutes § 8-26, the enabling statute, which grants municipal zoning commissions the authority to approve a waiver of their

---

[2] Haddam subdivision regulations § 5.1 provides: "<u>Conditions for Waiver</u>: The Commission, upon written request from the applicant, may waive specific requirements of these Regulations with respect to a particular subdivision where, owing to conditions especially affecting such subdivision, a literal enforcement of these Regulations would result in practical difficulty and unusual hardship or undesirable land development, so that substantial justice will be done and the policy and intent of these Regulations will be preserved. No waiver shall be granted that would have a significant adverse impact on adjacent property or on public health and safety. Approval of any waiver requires a three-quarters vote of all members of the Commission."

regulations in appropriate circumstances.[3] General Statutes § 8-26, however, does not require that applications for waiver be made in writing.

The plaintiff makes three claims in this respect: first, that the application was not made in writing; second, that the waivers were not approved by a three-quarters vote; and third, that the approved roads were not safe. We will address each of these claims in turn.

## A

The plaintiff initially claims that the trial court improperly determined that Cortul had complied with the writing requirement of § 5.1. The provision requiring a written application for waiver is a local regulation and is subject to the interpretation of the commission itself. *Baron* v. *Planning & Zoning Commission,* 22 Conn. App. 255, 257, 576 A.2d 589 (1990). Upon review, "[t]he trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts." Id.

Cortul submitted both the November 30, 1988 cover letter and its detailed subdivision plans to the commission. These documents indicate, in written form, that waivers would be necessary. It is apparent from the commission's actions that these documents were considered sufficient by the commission to satisfy their local regulations. It is also clear from the record that

[3] General Statutes § 8-26 provides in pertinent part: "[Municipal subdivision zoning] regulations may contain provisions whereby the commission may waive certain requirements under the regulations by a three-quarters vote of all the members of the commission in cases where conditions exist which affect the subject land and are not generally applicable to other land in the area, provided that the regulations shall specify the conditions under which a waiver may be considered and shall provide that no waiver shall be granted that would have a significant adverse effect on adjacent property or on public health and safety. The commission shall state upon its records the reasons for which a waiver is granted in each case."

all interested parties (the commission, Cortul, and members of the public) were aware that waivers were necessary. Moreover, the plaintiff does not allege either a lack of notice or prejudice suffered therefrom. Accordingly, the trial court did not improperly determine that the commission had correctly interpreted its regulations and applied them with reasonable discretion to the facts of this case.[4]

## B

The plaintiff's next claim is that the trial court improperly determined that the requisite three-quarters vote had been cast to waive §§ 4.4.7 and 4.4.8 of the Haddam subdivision regulations, which concern the maximum permissible road grades in proposed subdivisions. The commission is comprised of seven members and therefore a favorable vote of at least six commissioners is necessary to satisfy the three-quarters requirement. The plaintiff does not dispute that the minutes of the July 5, 1989 meeting of the commission clearly indicate that the votes were six to one in favor of each of the waivers now in question. Nor does the plaintiff dispute that the minutes indicate that Martin cast the sole vote in opposition. The plaintiff directs our attention, however, to a "Motions for Waivers" form that was introduced into evidence. This form is kept by the Haddam commission in addition to the recorded minutes. It lists the various motions presented to the commission, indicates the vote taken on those motions, and includes space for the commissioners to sign their names under each motion.

[4] With respect to this claim, the plaintiff also argues that the trial court improperly granted Cortul's motion to amend the record on July 11, 1990, to include the November 30, 1988 letter. The plaintiff failed to object to either Cortul's motion to amend or the trial court's order granting the amendment. Since this claim is not of a constitutional magnitude; *State* v. *Golding,* 213 Conn. 233, 239, 567 A.2d 823 (1989); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973); nor a matter of "plain error," it is not now subject to review by this court. Practice Book § 4185.

The form used in this case also states that the vote on the waivers was six in favor and one opposed. Only five signatures in favor and one in opposition appear, however, on the form. The plaintiff argues that the trial court incorrectly determined, as a matter of fact, that the requisite number of votes in favor were cast. She asserts that the lack of the sixth signature required the court to determine that the vote was insufficient. We disagree.

"It is well established that an appellate court will not retry the facts. Our review is to determine whether the judgment of the trial court was clearly erroneous or contrary to the law." *Fuller* v. *Planning & Zoning Commission,* 21 Conn. App. 340, 344, 573 A.2d 1222 (1990). The evidence before the trial court included the minutes of the meeting where the vote on the waivers was taken and the "Motions for Waivers" form. Both clearly indicate that the requisite number of votes in favor were cast. The trial court determined as a matter of fact that the recorded vote of six to one on the form was correct and that the missing signature was merely an oversight. Accordingly, we cannot say that the conclusion of the trial court that the requisite number of votes was cast is clearly erroneous.[5]

## C

The plaintiff next claims that the trial court and the commission improperly determined that the roads, as appproved by the commission, were safe. Section 5.1 allows the commission to "waive specific requirements of these Regulations with respect to a particular subdivision where, owing to conditions especially affecting such subdivision, a literal enforcement of these Regulations would result in practical difficulty and

---

[5] Because of our disposition of this claim by the plaintiff, we need not consider the propriety of the trial judge's decision concerning Cortul's introduction of testimony of commissioner Peter Aduskevitch.

unusual hardship or undesirable land development, so that substantial justice will be done and the policy and intent of these Regulations will be preserved." It further states that "[n]o waiver shall be granted that would have a significant adverse impact on adjacent property or on public health and safety." Additionally, § 4.4.2 provides, in pertinent part: "Proposed streets . . . shall be planned in such a manner as to provide safe . . . access to proposed lots . . . ." The plaintiff claims that the trial court improperly upheld the commission's conclusion that the portions of the streets that required waivers were safe. She argues that any grade greater than that permitted in §§ 4.4.7 and 4.4.8 is, per se, unsafe.

The safety of the proposed road designs is a question of fact. " '[U]pon appeal, the trial court reviews the record before the [commission] to determine whether it has acted fairly or with proper motives or upon valid reasons . . . . We, in turn, review the action of the trial court.' *Willard* v. *Zoning Board of Appeals,* 152 Conn. 247, 248–49, 206 A.2d 110 (1964). 'The burden of proof to demonstrate that the [commission] acted improperly is upon the [plaintiff]. *Horvath* v. *Zoning Board of Appeals,* 163 Conn. 609, 316 A.2d 418 (1972); *Thorne* v. *Zoning Board of Appeals,* 156 Conn. 619, 621, 238 A.2d 400 (1968); *Talmadge* v. *Zoning Board of Appeals,* 141 Conn. 639, 642, 109 A.2d 253 (1954).' *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 654, 427 A.2d 1346 (1980)." *Adolphson* v. *Zoning Board of Appeals,* 205 Conn. 703, 707, 535 A.2d 799 (1988). "Our function on appeal is not to determine whether the trier of fact could have reached a conclusion other than the one reached, [as the plaintiff suggests]. 'Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported.' *Pandolphe's Auto Parts, Inc.* v. *Man-*

*chester,* 181 Conn. 217, 222, 435 A.2d 24 (1980)." *Alan* v. *Nissley,* 184 Conn. 539, 542, 440 A.2d 231 (1981).

The record amply supports the determination made by the trial court that the commission has not acted arbitrarily or illegally, or so unreasonably as to have abused its discretion. The commission's stated reason for granting the waivers was "[b]ecause waiver will introduce safer road design." It is clear from the trial court's memorandum of decision that all of the evidence that was before the commission at the time it granted the waivers was thoroughly reviewed, including testimony of the town engineer and the results of a traffic study. We cannot say that either the trial court's method of review or its conclusion is not legally correct or factually supported. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra.

The plaintiff also claims that the conditions on the defendant's property creating the need for the waivers "are not unique or even especially affecting this subdivision" and that therefore the trial court improperly determined that § 5.1 had been complied with. The trial judge is correct in stating that "[s]ection 5.1 does not require that the conditions affecting the subdivision be unique such that they exist no where else in the vicinity, but that they 'especially affect' the subdivision." With respect to a determination of conditions "especially affecting" the subdivision, the trial judge's memorandum of decision states: "A commission member or member of the public who is unidentified in the transcript states that access is 'extremely difficult not because of our regulations but because of the site.' Thus, it was acknowleged that while the regulations themselves are reasonable, when applied to Cortul's site, they result in practical difficulty and unusual hardship. Therefore, it is found that the commission did not violate § 5.1 of the regulations in approving the waivers." Although such a determination was not

favorable to the plaintiff, on review of the record, we cannot say that the determination was not legally correct or factually supported. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra. We conclude, therefore, that the trial court properly determined that the commission complied with § 5.1 of its subdivision regulations in granting waivers in this case.

## II

Next, the plaintiff claims that the trial court improperly determined that the commission did not exceed its statutory authority by incorporating the town engineer's recommendations as conditions of its approval of the Laurel Hill subdivision. In its memorandum of decision the trial court determined that the approval as written did not violate General Statutes § 8-26. We agree with the trial court.

The plaintiff specifically challenges the legality of conditions three, four and five of the commission's approval. Condition three requires Cortul not to conduct any blasting for the purpose of installing proposed detention basins, and in the event that rock ledge is encountered during such installation, the town engineer must modify the basin design to eliminate the need to remove ledge. Condition four requires that "prior to any construction which is contrary to the approved plans, the design engineer shall revise the plan and submit to the town engineer the revision, for review and approval." Condition five requires Cortul to secure the services of a professional engineer to inspect the progress of construction at a minimum of once a week, "to give guidance to the contractor, to ensure construction is according to approved plans, and to be available to recommend construction materials and solve construction problems when they occur."

General Statutes § 8-26 authorizes a municipal planning commission to consider and act on proposed sub-

division applications. "Nothing in the subdivision approval statute, § 8-26, allows for the imposition of conditions upon the planning and zoning commission's approval of a subdivision plan; the statute merely provides for the commission to 'approve, modify and approve, or disapprove' a subdivision application." *Carpenter* v. *Planning & Zoning Commission*, 176 Conn. 581, 592, 409 A.2d 1029 (1979). Our Supreme Court has held, however, that where the imposed "conditions" bear a rational relationship to the enumerated health, safety and public welfare concerns set forth in General Statutes § 8-25, such conditional approval may be appropriate. *Nicoli* v. *Planning & Zoning Commission*, 171 Conn. 89, 96, 368 A.2d 24 (1976); *Crescent Development Corporation* v. *Planning & Zoning Commission*, 148 Conn. 145, 152–53, 168 A.2d 547 (1961). In both *Nicoli* and *Crescent Development Corporation* the court affirmed the legality of commission approvals "subject to" changes in the proposed roads and access ways. The court has noted that "[t]he practical effect of the [commission's] action was to approve the plan after modifying it . . . ." *Crescent Development Corporation* v. *Planning & Zoning Commission*, supra, 148.

More recently this court has stated that "it is the nature of the underlying action taken by the planning commission that will determine its legality, not whether it is phrased in terms of a 'modification' or 'conditional approval' . . . ." (Emphasis omitted.) *Moscowitz* v. *Planning & Zoning Commission*, 16 Conn. App. 303, 311, 547 A.2d 569 (1988). In *Moskowitz*, the court held that a "blanket prohibition on future subdivisions, without reference to a relevant provision in either the local subdivision regulations or the enabling statutes, is an impermissible expansion of the powers wielded by a planning commission." Id.

The conditions imposed by the commission in this case are more akin to those at issue in *Nicoli* and

*Crescent Development Corporation* than to the condition at issue in *Moskowitz.* They are imposed for the purpose of ensuring safety. The trial court determined that conditions three and five have a rational relationship to the health and safety considerations of §§ 8-25 and 8-26. In addition, the trial court determined that neither condition requires the approval of a coordinate municipal authority. We agree with these determinations.

With respect to condition four, the trial court determined that "this condition is merely a restatement of the requirement in sections 8-25 and 8-26 of the General Statutes and section 1.1 of the Regulations that prior to any subdivision of land, a plan for the subdivision or resubdivision must be approved." While the language of condition four appears to suggest that approval must be obtained by the town engineer, the trial court interpreted it as "requiring that revisions be submitted to the Town Engineer for his review, comments and recommendations prior to final review and approval by the commission." Since the commission is presumed to have acted in accordance with the law, we agree with the trial judge's interpretation of condition four. See *Murach* v. *Planning & Zoning Commission,* 196 Conn. 192, 205, 491 A.2d 1058 (1985).

We conclude, therefore, that the trial court properly determined that the commission did not violate General Statutes § 8-26.

### III

The plaintiff's third claim is that the trial court committed procedural errors in upholding the decision of the commission. This claim is raised in three parts. He claims, first, that the trial court improperly determined that it was entitled to search the record of the proceedings before the commission for adequate reasons to support the commission's decision. Second, that the trial court improperly placed the burden of "going forward,"

as well as the burden of proof, on the plaintiff regarding the issue of whether one of the commissioners should have been disqualified from voting on the subdivision application because he was absent from one of the public hearings and absent from a commission meeting and was, therefore, unable to exercise an informed judgment when voting on the application; and, third, that the trial court should have entered a default judgment against the commission for its failure to appear at the hearing before the trial court. We will address each of these claims in turn.

### A

The plaintiff asserts that the trial court improperly determined that it was entitled to search the record of the proceedings before the commission for adequate reasons to support the commission's decision. General Statutes § 8-26 provides that "[t]he commission shall state upon its records the reasons for which a waiver is granted in each case. . . ." According to the record in this case, the stated reason for granting the waiver of §§ 4.4.7 and 4.4.8 was "[b]ecause waiver will introduce [a] safer road design." As admitted by the plaintiff in her brief, "[t]here is nothing inadequate or ambiguous regarding this wording." Because of our earlier determinations that this reason was adequate under the regulations to support the decision of the commission to grant the waivers and that this decision was supported by sufficient evidence found in the record of the proceedings before the commission, the trial court's judgment upholding the commission's decision was correct and did not require a search of the record for an adequate reason for granting the waiver. Nevertheless, we will reiterate that "[i]f the board fails to give the reasons for its actions, or *if its reasons are inadequate,* the trial court must *search the record* to determine whether a basis exists for the action taken." (Emphasis added.) *Stankiewicz* v. *Zoning Board of*

*Appeals,* 15 Conn. App. 729, 732, 546 A.2d 919 (1988), aff'd, 211 Conn. 76, 556 A.2d 1024 (1989); see also *Gagnon* v. *Inland Wetlands & Watercourses Commission,* 213 Conn. 604, 608–609, 569 A.2d 1094 (1990). Accordingly, the trial court correctly stated the law in its memorandum of decision, and the plaintiff's claim is without merit.

B

The plaintiff next claims that the trial court improperly placed the burden of production on the issue of the disqualification of one of the commissioners on the plaintiff. This claim arises in the following context. The plaintiff alleged that one of the commissioners had failed to attend all of the public hearings on the proposed subdivision prior to voting on the application. It is apparently the plaintiff's position that the commissioner should have been disqualified from voting on the subdivision because he had not sufficiently acquainted himself with the issues raised and the evidence adduced at the public hearings in order to exercise an informed judgment. See, e.g., *Loh* v. *Town Plan & Zoning Commission,* 161 Conn. 32, 42, 282 A.2d 894 (1971); *Grillo* v. *Zoning Board of Appeals,* 4 Conn. App. 205, 207, 493 A.2d 275 (1985). Although the plaintiff concedes that the trial court correctly reasoned that the burden of proof originated with the plaintiff; see *Grillo* v. *Zoning Board of Appeals,* supra; and acknowledges the complete absence of any evidence on the fact in issue, she nevertheless asserts that the trial court should have ruled in her favor. We find this claim to be without merit.

The plaintiff argues that the defendants gratuitously assumed the burden of proof on this issue by attempting to introduce evidence of the commissioner's familiarity with the record at trial. In support of this assertion, the plaintiff cites cases for the proposition that

the burden of proof is generally placed on the party pleading the matter. The defendants, however, did not affirmatively plead any facts in this case.

Alternatively, the plaintiff asserts that the record establishes a "prima facie case of [a commissioner's] nonattendance" at a public hearing, and that this fact shifted the burden of proof to the defendants. This argument fails to recognize, however, that the only relevant issue is whether the commissioner had sufficiently acquainted himself with the record. " '[E]ven where hearings are required by statute, a commission member need not be present in order to participate in decisions "[i]f that member acquaints himself sufficiently with the issues raised and the evidence and arguments presented at the public hearing in order to exercise an informed judgment." *Loh* v. *Town Plan & Zoning Commission,* [supra].' *New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 724, 345 A.2d 563 [(1974)]." *Dana-Robin Corporation* v. *Common Council,* 166 Conn. 207, 216–17, 348 A.2d 560 (1974). The mere fact that the commissioner did not attend every public hearing on a particular proposal did not, therefore, establish a "prima facie" case of anything. The plaintiff failed to introduce any evidence disclosing that a commissioner had failed to acquaint himself with the issues. Accordingly, the trial court properly ruled that the plaintiff had failed to meet her burden of proof.

## C

The plaintiff finally asserts that the trial court should have defaulted the defendant commission because of its absence from the hearing before the trial court. At the hearing before the trial court, the plaintiff and Cortul appeared. The commission was not present or represented by counsel. The court conducted its evidentiary hearing and counsel for the plaintiff and Cortul argued their respective positions. The plaintiff,

however, never moved for a default or other sanction against the commission. This claim, therefore, has not been properly preserved at trial for appellate review. The plaintiff has failed to establish either an *Evans-Golding* constitutional claim; see *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989); *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973); or plain error. Practice Book § 4185. Accordingly, we will not review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.