This action is an appeal by a planning and zoning commission (hereinafter Commission) from a variance of set back lines granted by a zoning board of appeals (hereinafter Board) to Mrs. Benedict. Two issues are addressed: (1) whether the Commission is an aggrieved party entitled to appeal; and (2) whether in granting the variance, the Board acted within its statutory authority.
I.
Pursuant to General Statutes 8-8(b), ". . . any person aggrieved by the decision of a board may take an appeal to the superior court . . .". Aggrievement is divided into two general categories, statutory and classical. Statutory aggrievement exists where parties are granted standing by particular legislation rather CT Page 5733 than by the facts of a situation. Zoning Board of Appeals of the Town of Wallingford v. Planning Zoning Commission of the Town of Wallingford, 27 Conn. App. 297, 301 (1992). In zoning cases, statutorily aggrieved parties are persons owning land abutting or within a radius of 100 feet of any portion of the land involved in a board's decision and an agency or individual charged with the enforcement of an order affected by the board's decision. General Statutes 8-8(a)(1). For classical aggrievement, a two-part test must be satisfied. "First, the party claiming aggrievement must demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must establish that this specific, personal and legal interest has been specially and injuriously affected by the decision." Primerica v. Planning Zoning Commission of the Town of Greenwich, 211 Conn. 85, 92-93 (1989).
In this case, no party except the Commission has taken the issue of aggrievement seriously. In court, the Board declined to argue the question and the Board has joined in Mrs. Benedict's brief rather than file one of its own. Mrs. Benedict's brief does not mention aggrievement. By letter dated April 6, 1992, however, her lawyer notified the Commission's attorney that "belated research" showed the Commission to be aggrieved and he would not oppose a finding to that effect. Mrs. Benedict's lawyer did not appear at the aggrievement hearing.
The generalizations in the letter sent by Mrs. Benedict's lawyer do not amount to stipulation of facts. Aggrievement presents a jurisdictional question of fact for the court to determine. Primerica v. Planning Zoning Commission, supra, at 92. Absent a stipulation of facts, the court normally would be required to take evidence. See Kyser v. Zoning Board of Appeals of the Town of Westport, 155 Conn. 236, 247 (1967). Here, the Commission produced no evidence but at the hearing and from initial and subsequent briefs, its position is clear. The Commission believes that it is aggrieved because as "The representative of the public interest with regard to the enactment, amendment and overall enforcement of zoning regulations" it should be accorded standing to appeal any variance that may be granted by the Board.
In claiming aggrievement, the Commission relies on both the statutory and the classical varieties. The statutory argument is that since the Commission has the power to order the zoning enforcement officer to take an appeal from any decision of the Zoning Board of Appeals, the Commission as a body politic, may take such an appeal. With this argument the court disagrees. The situation is not one of substituting a principal for an agent. Rather, CT Page 5734 the question is whether the court can enlarge the legislative classification of parties with automatic standing. In Tyler v. Board of Zoning Appeals of the Town of Woodbridge, 145 Conn. 655,657 (1958), the Supreme Court in construing 379d (Cum. Sup. 1955), a precursor to and containing the same language as General Statutes 8-8(b), held that a zoning commission without enforcement responsibilities had no statutory status to appeal a variance granted by a board of appeals.
A commission whose regulations involve it in the enforcement of zoning orders and decisions is apparently the separating factor between Tyler v. Board of Zoning Appeals, supra and Bouvier v. Zoning Board of Appeals of the Town of Monroe 28 Conn. Sup. 278,285 (1969), upon which the Commission relies. Unlike the Monroe regulations in Bouvier supra at 282, however, the administration section[1] of the Middlebury regulations does not mention the Commission and places authority and responsibility for enforcement solely with the zoning enforcement officer.
The burden of proving aggrievement is on the Commission. Zoning Board of Appeals of Wallingford v. Planning Zoning Commission of Wallingford, supra at 301. From what has been presented, the court concludes that the Commission has not established a statutory right of aggrievement. Aside from the Tyler and Bouvier cases, there is a dearth of decisions where a zoning commission, as distinguished from a zoning enforcement officer, seeks to overturn a variance granted by an appeals board. For this reason logic dictates that the analysis of the claim of classical aggrievement begin with a reference to the roles assigned to zoning commissions and zoning boards of appeal under Connecticut law.
 The power to zone, using that term in its broad sense, comprehends the power: (1) to create building zones and to adopt zoning regulations; and (2) to apply them, when questioned in a given situation, in harmony with their general purpose and intent so that unusual difficulties and unnecessary hardships are avoided. The former power is entrusted to a zoning or planning commission, the latter power to a board of appeals.
 A board of appeals is indispensible to the zoning process both from the constitutional and the practical standpoint In creating building zones and in adopting pertinent zoning regulations, zoning commissions are required to deal with established and growing communities. It is inevitable that a zoning regulation permitting certain uses of land and proscribing others will adversely affect individual rights in some cases. The essential purpose of a board of appeals is to deal with these cases by furnishing elasticity in the application of CT Page 5735 regulatory resources so that they do not operate in an arbitrary or confiscatory and consequently unconstitutional manner.
Florentine v. Darien, 142 Conn. 415, 424, 425 (1955) (citations omitted).
A review of the quoted portion from Florentine v. Darien demonstrates that, despite the Commission's urging, neither Zoning Board of Appeals of Wallingford v. Planning Zoning Commission of Wallingford, supra nor Board of Zoning Appeals of Hamden v. Town Plan Zoning Commission of Hamden,[2]2 Conn. L. Rptr. 322 (1992) is supportive of the claim of classical aggrievement. In both of these cases the dispute between the agencies concerned the enumeration of the powers and duties of boards of appeal in General Statutes 8-6, the pertinent portion of which reads as follows:
 (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed.
Pursuant to 8-6(3), the Wallingford and Hamden zoning commissions had amended their regulations to restrict the granting of variances. The Wallingford amendment would allow variances only when the denial would "constitute an unconstitutional taking of property without compensation." In the Hamden regulations, the amendment provided that variances could not be granted for uses in districts where they were not allowed by right or by special permit from the commission. In both cases, the appeals boards were found to have met the tests of classical aggrievement. They had a specific personal and legal interest in their statutory duty to determine applications for variances. And this interest was specially and injuriously affected by the actions of the zoning commission. In both cases the appeals boards were successful. As stated by the Appellate Court in the Wallingford case, "[t]he commission has not been vested with either the authority wholly to eliminate the board or the authority to change the standard on which the board may grant use variances." 27 Conn. App. at 303. CT Page 5736
In the instant case the matter is entirely different. The Middlebury regulations give to the Board all of the powers and duties provided for zoning boards of appeal in the General Statutes.[3] Since the determination of applications for variances is entrusted by law to the Board, the Commission qua commission simply cannot be classically aggrieved whenever a variance is granted.
II.
An examination of the record discloses that the evidence set forth below was before the Board.
The acre and one-half parcel at 1172 Southford Road, Middlebury has been in the continuous ownership of Anna M. Benedict and her husband and then Anna M. Benedict alone since 1937. In 1975, the parcel was placed in the building zone known as Light Industrial-200. The L.I.-200 zone allows minimum lot sizes of five acres. For building set back lines, the regulations require 100 feet from any street line or other property lines and 50 feet from any wetland or watercourse.
Located on the parcel are a single-family house and detached garage, neither of which is in a particularly good condition. The house was Mrs. Benedict's residence until some time in 1990, when she entered the Lutheran Home in Southbury. At one time, the parcel was larger. Several years ago, however, the Town of Middlebury took 10,600 square feet from it to construct a sanitary sewer pumping station. The house on the parcel and the pumping station are less than 100 feet from each other. Southford Road is also known as State route no. 188.
On or about March 26, 1991, Mrs. Benedict applied for variances. In her written application three variations from zoning ordinance requirements were requested: (1) to change the minimum set back line of 100 feet from any street line to 50 feet; (2) to change the minimum set back from any other property line from 100 feet to 20 feet; (3) to add as permitted uses, those uses that are allowed in a professional office 40 zone.[4] The request for a use variance was withdrawn at the hearing before the Board on September 4, 1991, so that the administrative determination involved only the set back lines.
The application referred to items that were submitted as enclosures. One item was a letter from Main Street Realty describing the property and detailing efforts to market it. Another item was the billing from the Lutheran Home for the care of Mrs. Benedict. As of February 28, 1991, the cost of her care was $37,512.50 accruing at a per diem rate of $124.50. In the application Mrs. Benedict's financial need is mentioned but also noted is that CT Page 5737 financial hardship is not a sufficient ground. The third item was a map showing that the applications of the set back lines required for the L.I.-200 district to the 1.5-acre parcel resulted in a narrow triangular area of only 2700 square feet being available for development pursuant to the zoning regulations.
At the public hearing held on September 4, 1991, Fred Volpe from Main Street Realty spoke in favor of the application. According to the letter submitted with the application, Main Street Realty had been endeavoring to sell the Benedict property for 1-1/2 years and there had been many interested parties. Mr. Volpe stated that potential purchasers of residential properties became disinterested in the Benedict parcel because of its placement in an industrial zone and prospective industrial purchasers had shied away upon learning that existing set back lines meant that only a small portion of the parcel could be utilized. If the application were granted, Mr. Volpe said that he had several prospective purchasers. He had explained to them that the zoning regulations prescribed a density limitation so that structures could not exceed 20% of the area of the parcel.[5] His prospects did not object to the density limitation because the new set back lines would more than triple the usable area. The prospective purchasers were interested in erecting an industrial building albeit not a large one.
On September 4, 1991, Mrs. Benedict's attorney also spoke at the public hearing as he had done at a previous hearing on May 1, 1991. He explained that the language in the application did not mean that there would be a set back line less than 50 feet from the rear boundary which was Eight Mile Brook. As mentioned, the Middlebury regulations prohibit buildings or structures within 50 feet of a wetland or watercourse.[6] He stressed that with the withdrawal of the request for a use variance,[7] any use made of the parcel would have to conform with the use requirements of the L.I.-200 District.[8]
After the public hearing, the Board voted 4-1 to grant the variances requested for the set back lines. One member, who voted in favor, said that the parcel was useless as residential property. Three members who voted in favor noted that they had approved only the reduction in set back lines. The one member who voted against the reduction in set back lines did so upon the belief that a legal hardship had not been shown.
The Board's formal minutes reflect the withdrawal of the request for a use variance, leaving for consideration only the set back variances. No reason is given in the minutes for the Board's approval except to say that it was done with the understanding "that permitted land/premises usage was restricted to current zoning; any change in usage would require a ruling from [the] Planning CT Page 5738 Zoning [Commission]."
The failure of the Board to state a reason for its decision does not make the decision ineffective. General Statutes 8-7 contains language that a reason should be stated and the exceptional difficulty or unusual hardship upon which the decision is predicated should be specified. Nevertheless, if a board fails to give reasons or if its reasons are inadequate, the court must search the record to determine whether a basis exists for the action taken. Shailer v. Planning Zoning Commission, 26 Conn. App. 17, 30 (1991); Stankewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 732
(1988), aff'd 211 Conn. 76 (1989).
In a zoning case, tried as this one on the administrative record, judicial review is limited. The court cannot substitute its judgment for that of the Board or make its own factual determinations. Torsiello v. Zoning Board of Appeals, 3 Conn. App. 47, 49
(1984). Upon appeal, the function of the court, aside from the issue of aggrievement, is limited to examining the administrative record to determine whether the Board's conclusion was supported by the evidence that was presented. Farrington v. Zoning Board of Appeals, 177 Conn. 186, 190 (1979), Green v. Zoning Board of Appeals, 4 Conn. App. 500, 502 (1985).
Even if the court is wrong on the issue of aggrievement, the Board's decision to grant the set back variances should be upheld because the record demonstrates that the Board would easily have found hardship. Contrary to the opinion expressed by the Board's dissenting member, and implied in the Commission's briefs, the hardship originated in 1975 when this undersized parcel was placed in the L.I.-200 District where set back lines made development in compliance with the zoning ordinance impossible. Chevron Oil Co. v. Zoning Board of Appeals, 170 Conn. 146150 (1976). If the taking of a portion of Mrs. Benedict's land by the Town of Middlebury for a pumping station occurred afterward, it exacerbated the preexisting hardship. See Smith v. Zoning Board of Appeals, 174 Conn. 323, 324 (1978).
The other aspect of hardship is that the requested variance must not be one that substantially affects the comprehensive zoning plan. Smith v. Zoning Board of Appeals, supra; Green v. Zoning Board of Appeals, supra. This aspect also was satisfied by the Board's insistence that any post-sale use of the parcel be consistent with uses permitted in the L.I.-200 District unless a different use was approved upon application to the Commission.
III.
The Commission is in error in its contention that the variance were granted solely to facilitate a sale that would provide an asset CT Page 5739 to pay for Mrs. Benedict's care at the Lutheran Home. For the reasons stated herein, the Commission's appeal is dismissed.