[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This an appeal from the decision of defendant Bloomfield Town Planning and Zoning Commission (hereinafter PZC) granting an application to extend an educational use in a residential zone. Also named as a defendant is the Talcott Mountain Science Center for Student Involvement, Inc., owner of the school property at issue. The named plaintiff is Abington Limited Partnership. In plaintiff's brief, plaintiff is characterized as "an abutting homeowner." Said "homeowner" is Michael Konover, a principal in Abington Limited and a developer who has acquired a large parcel of land adjacent to the school property. Mr. Konover's property is located in Avon, and has been the subject of a subdivision application in that town.
The Talcott Mountain Science Center is located in Bloomfield. Access is by Montevideo Road, a private dead-end road of approximately 9000 feet. Most of the road is located in Avon, with the exception of the last 2500 feet.
The Science Center has been in operation for approximately twenty-five years. It began when the federal government transferred a six acre parcel to the town of Avon. There were buildings located on the site, which had been used as a Nike-Ajax missile station. The Avon schools began using the buildings for science programs. At the time of the transfer from the federal government, the Bloomfield Zoning Regulations stated that land held for public purposes would not be governed by the regulations. The regulations further provided that in the event the use was abandoned, no further use could be established until the property was zoned. In 1975, Avon transferred title of the parcel to the Science Center. The "use" has continued without interruption to the present.
In December 1988, site plan approval was given for a new building. This building was located on land acquired from the CT Page 9774 State of Connecticut in 1980. No hearing was held on the site plan. The town planner stated at the hearing that is the subject of the present appeal that the town did not realize that the new building was not located on the original parcel.
After construction began, plaintiff began complaining to the PZC that no public hearing had been held on the site plan. The PZC asked the defendant to agree to a hearing. The defendant at first declined, but subsequently agreed to apply for a hearing. The hearing was limited to the issue of whether the Science Center should be allowed to "extend" its educational use. The PZC voted unanimously to approve the use subject to certain conditions. The stated reasons for the decision were as follows:
 1. The use already exists: this is primarily a relocation of existing uses and not a significant intensification of uses.
 2. In the Commission's opinion, the extension of the use of these new buildings does not make the existing traffic problem worse on the access road to the site. The Commission has been advised by the Town Attorney for the Town of Bloomfield that we cannot impose any conditions on the access road to the site because this road is not located in Bloomfield.
 3. With the appropriate screening and placement of the lighting, the height of the new buildings is not incompatible with the height for the zone in which they are located.
 4. With the effective and significant utilization of buses, vanpools and carpools, sufficient off-street parking will be provided to meet the requirements of the use as proposed.
Record, Exhibit 35.
The decision of the PZC was published in accordance with applicable law. Plaintiff timely filed the present appeal pursuant to 8-8 General Statutes. At the hearing, plaintiff presented evidence that it is aggrieved as owner of abutting property.
CT Page 9775 Prior to the hearing, plaintiff sought to supplement the record. This motion was denied by the court, Maloney J., which court also denied a motion to reargue. Despite these rulings, plaintiff has included in its brief the substance of the matters which were the subject of the original motion. The brief indicated that plaintiff intended to renew the motion at hearing, and was ". . . treating the appeal brief essentially as a pre-trial memorandum on the issue . . . ." At hearing, the motion was again denied. All portions of plaintiff's brief which refer to matters originally the subject of said motion have been disregarded in connection with this decision, along with any reference thereto which appears on the record other than in the motion or the record before the PZC.
The record of the hearing is concerned almost exclusively with one issue — the condition of Montevideo Road and the traffic currently existing and which might exist as a result of the new facility. Traffic studies with widely conflicting results were presented. The plaintiff's expert, Mr. Hesketh, stated that the peak hour volume was sixty between the hours of 8:00 and 9:00 A.M. Record, T. 5/9/91 p. 53. Mr. Hesketh used traffic counters placed at the beginning of Montevideo Road, and at another point between that location and the end of the road. No counters were placed near the Science Center driveway. At the time of the count, construction vehicles were going to the Science Center site and to the Konover site. Mr. Hesketh could not say what the traffic increase would be if the new Science Center building were used, but stated ". . . that larger buildings use more traffic than smaller buildings." (Record, T. 5/9/91 p. 56). The defendants' expert, Mr. Greenberg, disagreed significantly with Mr. Hesketh. He placed a counter 100 feet from the school driveway and did manual counts at the driveway. He estimated the trips attributable to the Science Center to be 125 per day — about half of Mr. Hesketh's count. He attributed the discrepancy, in part, to the construction traffic. (Record T. 6/13/91 pp. 19-20). He also disagreed with Mr. Hesketh's projections. Mr. Greenberg stated that increased size will result in more traffic if the building is, for example, a shopping center. He did not believe the same would be true for a private facility not generally open to the public.
All evidence on the record shows Montevideo Road to be a substandard road. All evidence on the record shows that the road has been virtually free of accidents and that there has never been an accident involving anyone associated with the CT Page 9776 Science Center. This phenomenon was attributed to the fact that the poor condition of the road results in extra caution on the part of those who use it.
Dr. LaSalle, the director of the school, testified that the old buildings were small and completely inadequate. A videotape was submitted to demonstrate that people were working in little more than closets. Dr. LaSalle indicated that current enrollment is 55, although it has been as high as 64. School enrollments are decreasing in general, due to population demographics. The Science Center would like enrollment to increase to 100, at the rate of 5 or 6 a year. (Record T. 5/9/91 p. 44). In addition to the regular students, the school services programs for other local schools. These students are brought in by bus. Dr. LaSalle testified that, with few exceptions, the regular students are brought in by van, and the faculty members by carpool. In 1993, the school intends to substitute two buses for the vans that are now being used. The maximum number of students that could be on the site at any given time would be 225 — a number that has been serviced in the past. (Record T. 5/9/91, pp. 42-43). The actual number of students using the center has steadily decreased over the last ten years. (Record T. 5/9/91 p. 6). In summary, Dr. LaSalle testified that the new buildings are intended to provide adequate facilities were none had existed. (Record, T. 5/9/91 pp. 9-15).
"The court's function in considering an appeal from a zoning authority is limited to a determination of whether the board had acted illegally, arbitrarily or in abuse of the discretion vested in it." Tazza v. Planning Zoning Commission, 164 Conn. 187, 191, 319 A.2d 393 (1972). "The burden of showing that the board acted without sufficient evidence, illegally or arbitrarily, or in abuse of its discretion [is] on the plaintiffs." Welch v. Zoning Board of Appeals, 158 Conn. 208, 216, 257 A.2d 795 (1969).
This is a case wherein the local authority was presented with conflicting evidence. Connecticut law has long held that resolving these conflicts is solely within the province of the zoning authority. Feinson v. Conservation Commission, 180 Conn. 421,425, 429 A.2d 910 (1980). The question is not whether the court would have resolved the conflict in a similar manner, but whether the evidence on the record supports the conclusion reached. Calandro v. Zoning Commission, 176 Conn. 439, 440, CT Page 9777408 A.2d 229 (1979).
At the hearing on the appeal, the court asked plaintiff's counsel what he believed to be his best argument to prevail on appeal. He replied that the road is bad. There is no question that the evidence shows Montevideo Road is, at best, less than ideal, and, at worst, just plain "bad." The issue, however, is not the inadequacy of the road. Rather, the issue is whether the zoning authority acted legally and reasonably in view of the conditions that exist on the road. Dr. LaSalle testified that the school was merely substituting an adequate facility for old buildings that were grossly inadequate. The PZC was entitled to credit that evidence. Indeed, the abutting homeowner, Mr. Konover, stated that . . . "the issue here is credibility, and nothing else." (Record, T. 5/9/91 p. 75). In finding that the use was not a significant intensification, the PZC resolved the issue of credibility in the defendants' favor. There is nothing on the record to suggest this was illegal, arbitrary or an abuse of discretion. In fact, the only "evidence" that the use would intensify were generalized fears that a larger facility necessarily implied an expanded use. The same reasoning applies to resolving the conflict between the traffic experts. The PZC was within its discretion to find that the use would not exacerbate existing traffic problems based on the evidence of the expert whose testimony it found most credible.
The relevant zoning regulations applicable to the appeal are as follows:
SECTION IV — USE DISTRICT REGULATIONS
A. Uses Permitted in any Zone.
 1. The following uses may be permitted in any zone, after a public hearing, subject to the satisfaction of the requirements and standards set forth herein.
 (a) Colleges and private schools including day care centers and nursery schools, but not including schools for special training such as music, dancing, barbering or industrial pursuits. (emphasis added).
2. Where applicable, a plan of development shall be CT Page 9778 submitted to the Town Plan and Zoning Commission in accordance with site plan review. Such uses are subject to the following requirements. (emphasis added).
 (a) The Commission shall consider traffic problems created by the proposed site location, including the traffic load, street capacity, and alignment and circulation problems on existing streets.
 (b) The height and area schedule for the respective zone in which the proposed use is to be located shall apply to the proposed use. Sufficient parking shall be provided in paved areas to provide off-street parking for the maximum number of vehicles required for the peak activity period of the proposed use.
 (c) In a residential zone, no outside storage of vehicles or equipment shall be permitted.
 (d) The Commission may require suitable screening to protect adjacent property from any noise, glare, or disruptive activity generated by the proposed use.
Additionally, pursuant to Section III. M.4(a), the regulations state that "[i]n any submission under this Section, the Commission may approve or disapprove the proposed plan, or may approve it subject to appropriate conditions and safeguards designed to further the general purposes of this ordinance and the specific purposes indicated above." (Emphasis added). Those "purposes" are delineated in Section III. M.2:
 In reviewing any site plan under this section, the Commission shall be concerned with the following objectives:
 a) To promote the public health, safety, comfort, convenience, prosperity, amenity and other aspects of the general welfare.
b) To ensure that the layout of the proposed use CT Page 9779 shall be in harmony with the surrounding area, and shall contribute to its desirable and orderly development.
 c) To ensure that traffic generated by the proposed use will not adversely affect the surrounding area, and will not disrupt the orderly movement of vehicles and pedestrians in the area.
 d) To protect and preserve the supply of potable drinking water by protecting and preserving sub-surface aquifers.
In conjunction with approval of the application, the PZC imposed the following conditions:
 1. The expansion of the use is restricted to the new buildings and existing buildings and land related to the buildings, but not the bulk of the site.
 2. Any additional physical expansion of structures or site, relative to use or parking, would have to come back to the Commission for review.
 3. Any expansion or additional activity in any way that can be construed as commercial will have to come back to the Town for the appropriate review and action.
 4. The academy will be limited to 100 students as presented.
 5. The academy and the Science Center will continue to encourage and, as appropriate, require that people arrive at the site through buses, vans and carpools to minimize the traffic on Montevideo Road.
 6. Any significant change in the purpose or activities of the academy or the Science Center, relative to type of events, course curriculum or other activities will have to come back to the TPZ for its review and approval.
 7. Additional screening of the new buildings shall be developed and installed to appropriately screen those buildings effectively from the Tilney's property CT Page 9780 subject to the approval of the Town Planner (prior to installation).
 8. Any exterior lights, either existing or proposed, shall be so directed as to not infringe upon any abutting properties.
 9. Stop signs shall be located on the road where appropriate, subject to the approval of the Director of Public Works and the town Planner.
 10. There will be no general public use of the site without the appropriate review and approval of the Town of Bloomfield.
Record, Decision, Exhibit 35.
Plaintiff claims that the PZC lacked authority to impose any conditions. Under Section IV of the regulations as set forth above, uses are to be considered ". . . in accordance with site plan review." Record, Regulations, Sec. IV. 2. Site plan review permits approval ". . . subject to appropriate conditions and safeguards." Id. Sec. III. M.4. This court finds no merit to the claim that the PZC was without authority to impose conditions.
Plaintiff further claims that even if the PZC had the power to impose conditions, the conditions do not adequately address the traffic problems and, thus, fail under applicable standards. The simple answer to this claim is that the PZC did not find that the new facility would either exacerbate any existing "traffic problems" or create new problems. As previously noted, this finding is supported by substantial and competent evidence in the record. Plaintiff specifically challenges condition number 9 concerning stop signs. Plaintiff claims that this condition fails because it improperly delegates the PZC's authority to others — in this case, the Director of Public Works and the Town Planner. In support of this claim, plaintiff cites Farina v. Zoning Board of Appeals,157 Conn. 420, 254 A.2d 492 (1969). In Farina, a special exception was granted on condition that the town traffic commission determine the extent of traffic increase so that the road could be widened. The court found this condition void as an improper delegation of authority insofar as the zoning board of appeals had the duty to determine the extent of traffic CT Page 9781 increase. Farina is inapposite to the case herein as it relates to condition number 9. In the present case, the PZC properly made a determination with regard to traffic. Approval was not dependent on adding stop signs. Even though the stop sign language is couched in "conditional" terms, it is not directly related to approval in light of the finding that the use is not an intensification and would not generate new traffic. Condition number 9, in this context, is merely a restatement of the duties which are the usual responsibility of other town departments. See Shailer v. Planning Zoning Commission, 26 Conn. App. 17, 596 A.2d 1336 (1991). Conditions 7 and 8, relating to screening and lighting, are specifically authorized under Section IV. a. 2(d) as set forth herein at page 10. "Conditions" 1, 2, 3, 4. 5. 6 and 10 are not integral to the approval. These items merely restate the fact that the use is limited to that which has been approved. These "conditions" underscore the finding that there was no present intensification of use, and that a change in any of these factors would be considered in determining whether the use had intensified in the future.
Plaintiff's final claim is that the PZC unlawfully employed the use permit power to expand an illegal use. The rationale for this argument is dependent upon matters that have been excluded by the denial of plaintiff's motion to supplement the record. Thus, this claim is not properly before the court.
In the "background" section of plaintiff's brief, the issues sought to be introduced by motion are discussed at length. In connection with these matters, which remain outside the record, it is alleged that the PZC not only acted illegally in all respects, but did so to reach ". . . a predetermined result." This court is compelled to note that this allegation is completely unsupported by the record. The PZC devoted long hours to public hearings and to their deliberations. Questions were asked, issues were discussed, and a decision reached which was set forth with reason and clarity. "There is a strong presumption of regularity in the proceedings of a public body such as a municipal planning and zoning commission." Murach v. Planning Zoning Commission, 196 Conn. 192, 205, 491 A.2d 1058
(1985) [citations omitted]. There is nothing on the record of this case to indicate that the decision of the PZC was illegal, arbitrary or an abuse of discretion or that the PZC did not exercise its judgment in an honest and reasonable fashion.
CT Page 9782 For the foregoing reasons, the appeal is denied.
DUNNELL, J.